## JOHN WINTER *v.* JOHN STOCK.

DEED OF LAND TO L. B. & Co.—A conveyance of land to L. B. & Co. vests the legal title of the same in L. B. alone, and his deed will give to his grantee a good and valid title.

WARRANTY OF TITLE.—A covenant of the grantor, warranting the title of the land sold as "indisputable and satisfactory," is not broken if the title is *good* and *valid.*

WARRANTY OF TITLE IN A CONTRACT TO CONVEY.—W. entered into a contract in writing with S., agreeing to convey to him a lot of land, and in the contract warranted the title to be "indisputable and satisfactory, or no sale." S., at the

same time, let W. have a sum of money on account of the purchase. *Held,* that if the title was good and valid, W. could not recover back the money from S.

OPINIONS OF A WITNESS AS EVIDENCE.—In the trial of an issue as to the validity of a title to land, the opinions of a witness respecting the title are not admissible in evidence.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

On the trial, plaintiff called as a witness the attorney who made an examination of the title for him, and asked him if, from the abstract and examination he made, he found the title satisfactory?

The defendant objected to the question, and the Court overruled the objection.

The other facts are stated in the opinion of the Court. .

*Sidney V. Smith,* for Appellant, argued that the question whether the title was indisputable and satisfactory was one solely for the Court to pass on, and not to be arrived at from the opinions of witnesses, and cited *Lord* v. *Stevens,* 1 Young and Coll. Exch. R. 222 ; *Romilly* v. *James,* 6 Taunt. 263 ; and 24 Mo. 98. He also contended that the deeds to Louis Blanchard & Co., and Antoine Couttolene & Co. were, in law, merely deeds to Louis Blanchard and John Antoine Couttolene.

*Brooks & Whitney,* for Respondent, argued that the question at issue was not whether the defendant had title to the lot, but whether his title was *indisputable* and *satisfactory,* and that if, upon an examination it appeared to the plaintiff that the title was doubtful, he might maintain the action.

By the Court, CURREY, C. J.

This action was brought to recover the sum of eight hundred dollars, paid by the plaintiff to the defendant on a contract for the purchase of a lot of land in the City of San Francisco. The contract between the parties was in writing, the concluding clause of which on the part of the defendant, the bargainer, is in these words : " I warrant an indisputable

and satisfactory title, or no sale, and I have to pay the expenses for the examination of the title." The defendant's title was submitted to a lawyer for examination, who pronounced against it. From the original source to the defendant the title to the property had passed through several different persons. On the 7th of August, 1856, it appears that Etienne Louis Racouillat and Henry Racouillat owned the property, and on that day conveyed the same by deed to Louis Blanchard & Co. and John Antoine Couttolene & Co. On the 8th of August, 1857, Couttolene and Ernest Paris executed a deed of all their right, title and interest in and to the lot, to Louis Blanchard & Co. In February, 1861, Blanchard and Francois Porta executed a deed of the lot to Edme Ludovic Racouillat, who afterward conveyed the lot to the defendant. Immediately after the title was pronounced defective, the plaintiff informed the defendant that the title was not of the character to satisfy the defendant's warranty, and at the same time demanded a return of the money deposited as a part of the purchase price of the premises. With this demand the defendant refused to comply, and thereupon this action was brought. The real issue between the parties was in respect to the validity of the defendant's title. The Court determined it against the defendant, and rendered a judgment in the plaintiff's favor for the sum of money demanded. From this judgment and an order refusing a new trial the defendant has appealed, and the question on which the case depends is as to the character of the defendant's title to the lot involved in this controversy. If it was upon the evidence "indisputable and satisfactory," or in other words a good and valid title, the plaintiff could not justly refuse to pay the purchase price, and thus perform his part of the contract, or, having paid it in whole or in part, he would not be entitled to recover back the money paid on account.

The objection made to the title, and which the Court below held well founded, was that the conveyance by the Racouillats was to Louis Blanchard & Co. and John Antoine Coutto-

lene & Co., and that the conveyance of the 8th of August,
1857, was by John Antoine Couttolene and Ernest Paris to
Louis Blanchard & Co., and that the conveyance of February,
1861, was by Louis Blanchard and Francois Porta to Edme
Ludovic Racouillat.

The fact that these several conveyances were made to certain persons whose names were mentioned with the words
" and Company" annexed thereto, seemed to have been regarded
as passing the title, not alone to the grantees named, but also
to persons not named, but represented by the word " Company," and that the deeds of the persons thus represented
were necessary to transfer the entire title of the property to a
subsequent grantee ; and that as " Company" was a word of
indefinite and uncertain import, it could not be known to the
purchaser that Paris and Porta were respectively members
and the only members of the firms of Blanchard & Co. and
Couttolene & Co.

The doctrine on this subject is well expounded in *Arthur* v.
*Weston and Strode,* 22 Missouri, 378, in which case it appeared
that in 1832 one Holcomb, from whom both parties claimed
title, conveyed certain lots of land to W. W. Phelps & Co.,
and that in 1838 Phelps and Oliver Cowdry and John Whitmore conveyed the same lots to Arthur, the plaintiff. In the
meantime, in 1835, the defendant Strode purchased the property and obtained a deed of the same under an execution sale,
upon a judgment against Phelps and Cowdry. At the trial
Arthur offered to prove that when the conveyance was made
to Phelps & Co., " said firm was composed of Phelps, Cowdry
and Whitmore;" but the Court rejected the offered evidence,
holding the law to be that " the deed to W. W. Phelps & Co.
operated to vest the legal title in W. W. Phelps alone, and
that the entire title passed by the Sheriff's deed under the
execution sale; and gave judgment accordingly." Upon writ
of error the Supreme Court sustained the decision of the Court
below, holding that the deed to W. W. Phelps & Co. did not
take effect as a legal conveyance of the premises to Phelps,
Cowdry and Whitmore jointly, but that it operated to convey

the property to Phelps alone. The Court observe that the question " is not merely whether the grantor intended to convey to the persons composing the firm, but whether the partnership style is, as a matter of law, a good name of purchase in a conveyance of real property sufficient to pass the legal title to all the individuals of the firm. * * * A conveyance of real property being required by the statute to be put in writing, the party who is to take as grantee must be sufficiently ascertained by the written instrument, or it is a nullity, so far as it purports to effect a transfer of the legal title." The Court, in the case here referred to admit, upon authorities cited, that parties to a deed may be described by other modes than by their proper names—as a grant to the wife of a person named, or to the first son or second son or to all the children of a particular person who is specified, or to a person by his name of office, if there be no other person who can answer the description. In Shepherd's Touchstone (235, 236) it is said : " If the grant be by deed, the grantee must be sufficiently named, or at least set forth and distinguished by some circumstantial matter, and that he be so named or described as that he may be capable by that name whereby he is set forth ;" and after giving examples of certain and definite description of grantees, without the use of their proper names, the learned author says : " But if the grant be made to the parishioners or inhabitants of Dale, or to the good men of Dale, or to the commoners of such a waste, or to the lord and his tenants, bond and free, these are not good grants ; for, albeit these persons are capable, they are not capable by these means, for want of that identity or that certainty which the law will allow to be tried." A deed to a person by name " and Company," as to " Louis Blanchard & Co.," contains no certain designation or description of any other person than Louis Blanchard, for the reason that the word " Company " may describe one person as well as another. On this subject the following additional authorities may be consulted with profit : *Jackson* v. *Sisson*, 2 John. Cases, 321 ; *Jackson* v. *Corey,*

8 John. 385; *Hornbeck* v. *Westbrook*, 9 John. 73; *Gossett* v. *Kent*, 19 Ark. 607.

If the defendant's title to the lot was a good and valid title, as it appears to have been, without reference to any extrinsic evidence, the purchaser, as a reasonable man, should have been satisfied with it. The defendant's title to the lot being good and valid, it was, in the sense of the defendant's warranty, an indisputable title, and the plaintiff was in duty bound to be satisfied with it. A purchaser under such circumstances cannot, because he may have become tired of his bargain, or for any other insufficient cause, say he is dissatisfied and thus avoid his contract. In this case the purchaser may have supposed he had sufficient ground to decline consummating his contract, and to recover back the money paid on account of it, inasmuch as counsel learned in law advised that defendant's title was defective. But of the correctness of this advice he took the risk. The opinion of the person who passed upon the question, however reliable his opinions in general might be, was not conclusive of the parties' rights in the premises. The question presented for decision in the Court below was whether the defendant's title was good or bad. If it was good, the plaintiff was not entitled to recover back his deposit; if it was bad, he was entitled to the money that he had paid on account of it. We think upon the face of the record the defendant's title was " indisputable and satisfactory " in law, and that the Court erred in deciding otherwise. We also hold that it was erroneous to obtain from the witness his opinion respecting the title. Whether it was good or bad was the question, and the main question to be passed upon by the Court. (*Romilly* v. *James*, 6 Taunt. 274; *Kent* v. *Allen*, 24 Mo. 106.)

The judgment must be and is hereby reversed.

SAWYER, J., dissenting.

The question is not whether defendant could convey a good title, but whether he had " an indisputable and satisfactory title." Admitting that a conveyance to " Louis Blanchard &

Company " conveyed the legal estate to Louis Blanchard alone, yet it is plain from the face of the deed that such was not the intention of the parties. If Blanchard took the legal title, it is simply because the description of the other parties intended to be grantees is indefinite and insufficient in law to identify them, and, for this reason alone, the legal estate failed to vest in them. But it appears upon the face of the deed, that other parties than Louis Blanchard were beneficiaries, and that he held the property upon some trust not fully disclosed by the instrument, and parties dealing with the property are put upon inquiry. At all events, there was a wide departure from the ordinary forms of conveyance, with a manifest defect on the face of the instrument, by which, at best, the rules of law vested the legal title in a party not intended to be the sole grantee, and a contest might, therefore, reasonably arise upon the title. The title was, in fact, rejected by an attorney, whose special business it was to pass upon titles to real estate, and even the defendant's counsel, on the trial of this case, was not satisfied with introducing his paper title to establish " an indisputable and satisfactory title ;" for he himself went outside of his paper title to show who the members of the firm were, and that all the beneficiaries of the trust had conveyed. If he was not satisfied to rest on his paper title, what right has he to say that the plaintiff ought to be satisfied with it? I do not think a title thus liable to doubt can be regarded as "indisputable and satisfactory." Evidently the market value of the title, whether good in law or not, must be impaired by such irregularities and defects until its validity shall have been actually adjudicated. No title ought to be regarded as satisfactory which requires evidence *dehors* the record to establish its validity. I do not think the title is such as the plaintiff is bound to be satisfied with, or as he was required to accept under the very special covenant in his contract. If the plaintiff was bound to be satisfied with his title, I do not see why he would not be required to be satisfied with any title that should finally turn out upon litigation to be valid. The ques-

tions in the cases cited in the prevailing opinion were not the same as those involved in this case.