By the Court,
Hawley, C. J.:
On the fifth day of June, 1869, one A. Montminy conveyed to “Thomas Barnett & Bro., of the town of Beno, county of Washoe, and state of Nevada,” a certain lot in said town. Thereafter, on the eighth day of April, 1871, Thomas Barnett conveyed the same premises to J. G. Becker, and said Becker, on the tenth day of April, 1871, conveyed the property to B. andB. Lachman, the respondents in this case.
This is an action in ejectment commenced on the fifteenth day of April, 1876, by the appellant, Isaac Barnett, to recover the undivided one-half of said premises.
The cause was tried in the court below without a jury, and was there decided in favor of the respondents, upon the ground that the action was barred by the statute of limitations.
*365 From the pleadings in this case it is admitted that on the eighth day of April, 1871; and for several years prior thereto, the ‘ ‘ plaintiff, Isaac Barnett, and Thomas Barnett were co-partners in the business of merchandising in said town of Beno.”
It was proven at the trial that Thomas Barnett had four brothers, but Isaac was the only one that ever lived at Beno. It is stated in the findings of fact that the business of the firm was, during its existence, conducted under the names of “Barnett Bro.” and “Barnett Bros.”
Was the plaintiff, upon these facts, vested with the legal title to an undivided one-lialf of said premises? This, in our opinion, is the material question presented in this case.
It will, of course, be admitted that the plaintiff- had an equitable interest and that, prior to the conveyance of Thomas Barnett, he could have instituted and maintained an equitable action to reform the deed by having his name inserted as one of the grantees therein in lieu of the term “Bro.” It will, also, be admitted that he could, after said sale, maintain a suit against Thomas Barnett to compel him to account for one-half of the proceeds derived from the sale of said property. But, in order to enable the plaintiff to support this action of ejectment, he must be clothed with the legal title; and hence the real question here is, as in Arthur v. Weston, “whether the partnership style is, as a matter of law, a good name of purchase, in a conveyance of real property, sufficient to pass the legal title to all the individuals of the firm.” (22 Mo. 378.)
A conveyance of real property is required to be in writing, and all the authorities hold that the grantee must be identified by name or by description, so as to be ascertained by the written instrument, or it is a nullity, in so far as it attempts or purports to convey the legal title.
It is said in Sheppard’s Touchstone, that if the grant be by deed the grantee must be sufficiently named, or at least set forth and distinguished by some circumstantial matter, and that he be so named or described as that he may be capable by that name whereby he is set forth. Begularly, it is requisite that the grantee be named by his names of *366 baptism and surname, and so it is most safe; and yet in some cases, though the name be mistaken, the grant is good. As if a grant be to I. S. and Em., his wife, and her name is Emetine; or a grant be to Robert, Earl of Pembroke, when his name is Henry; or to George, Bishop of Norwich, when his name is John. If the grant do not intend to describe the grantee by his known name, but by some other matter there, it may be good by a certain description of the person without either surname or name of baptism. And, therefore, a grant to the wife of I. S., or to the second son, or to the youngest son, will be good, for the person is certainly enough described. “But if a grant be made in these words, viz.: To four of the parishioners of Bale; or * * * to two of the sons of I. S., and he hath many sons, * * * these, and such like grants as these, are utterly void for uncertainty.” (Pp. 235-6-7.)
Appellant relies, among other authorities, upon the case of Hoffman v. Porter, where a deed was made to “Peter Hoffman & Son,” and it was admitted that Peter Hoffman was in partnership with his son John, and that the firm was known by the name of “Peter Hoffman & Son;” and Chief Justice Marshall decided that this circumstance was sufficient to designate the son intended in the deed. He took occasion, however, to state that the question was by no means free of doubt. In that case, the son John brought suit against the grantors in the deed to recover damages, in consequence of a defect in the title, under a covenant of warranty; and the justice of the case was so clearly with the plaintiff that the learned chief justice resolved the doubt in plaintiff’s favor, and gave validity to the conveyance. (2 Brock, 156.)
We do not think that the reasoning of that case, when considered in the light of the facts there presented and discussed, is sufficient to authorize us to declare that the deed here in question vested the legal title in Isaac Barnett.
In determining this question it must be distinctly understood that we are not called upon to decide whether it was the intention of the grantor to convey the property to Isaac Barnett; neither are we to decide what interpretation should *367 be given to similar language in a description in a devise of real property. The only question presented in this case, as before stated, relates exclusively to the sufficiency of the description in the deed to transfer the legal title so as to enable Isaac Barnett to sustain an action of ejectment.
In Jackson v. Sisson, the patent was to “James Parker, William Potter, and Thomas Hathaway, for themselves and their associates, being a settlement of Friends on the west side of the Seneca lake; to have and to hold,” etc. Kent, J., in discussing the question as to the legal title, said: “There was no legal estate created by the patent but Avhat vested in the three patentees named. The description of the association * * * -was too vague and uncertain to constitute a competent grantee at laAv, or a cestui que use, Avhose estate the statute would transfer into possession. (Sanderson on Uses, 62, 128.) * * * But the grant from the state is not to the three patentees named and to their associates. It is to James Parker, William Potter, and Thomas Hathaway, for themselves and their associates, being the settlement aforesaid; and, therefore, from the Avorcls of the grant, as Avell as from the uncertainty of the description, it is evident the associates had only an interest in equity, and that Parker and the others were vested Avith the legal estate, as trustees for the association.” (2 Johns. Cases, 323.)
But the doctrine upon which this ease rests, and the principle upon which it must be decided, is more clearly stated in Arthur v. Weston, supra, which was, like this, an action of ejectment. The deed in that case Avas from one Holcomb to W. W. Phelps & Co., and in the lower court the plaintiff offered to prove that at the date of the conveyance from Holcomb to W. W. Phelps & Co., said firm was composed of Phelps, CoAvdry and Whitmore, but this evidence Avas excluded, and the court declared the law to be that the deed to W. W. Phelps & Co. operated to vest the legal title in W. W. Phelps only. The supreme court, in sustaining the ruling and decision of the lower court, said: “We repeat, the only question in the present case is Avhether the description the deed gives of Phelps, Whitmore & CoAvdry *368 is of ‘ that certainty which the law will allow to be tried, ’ so as to constitute these persons competent grantees in a legal conveyance of real property. The objection here is not to the admission of the parol proof merely as such, for such evidence is admissible, to some extent, to determine the application of every written instrument. It is always received to show the correspondence of the parties claiming and the thing claimed, with the description given of them in the deed. The descriptive matter, whatever it may be, must be in the deed or in some other written instrument to which the deed refers; but the evidence that a particular person or thing answers to the description is necessarily by parol. To this extent we must always look outside of the instrument to ascertain what is meant by it. Neither does the objection here turn merely on the fact whether or not it be possible, by means of the description, to ascertain the persons intended. That was possible in several of the cases referred to, especially in the New York case (alluding to Jackson v. Sisson, supra), for the judge there admits that, although the description given would be insufficient as a legal description of the persons to take as the grantees of the legal estate, they Avere yet sufficient to create a valid trust in favor of the same persons, and that under the instrument the three grautees held the legal estate in trust for their associates. In a case from Maine (Beoman v. Whitney, 20 Me. 420), this question as to the effect of a deed to Whitney, Watson & Co., came up collaterally, and the. court said: ‘Who Whitney and Watson were is Avell known, and Avas proved in the case. If the other persons embraced under the general term, Company, could not take as grantees, Whitney and Watson, avIío Avere named, could, and thus they would hold for themselves and in trust for those associated Avith them, and this is sufficient to give operation to the conveyance.’ By reference to the adjudged cases, it is seen Avhat matter of description the law deems equivalent to a proper name in designating the parties to a conveyance. In all of them it Avas of those particulars by which the persons were quite as Avell knoAvn in their neighborhoods as' by their proper'names, and Avliick, of course, were of as easy proof; *369 and in some of them the parties were better known by the description than by their names. Such, however, we do not think is the character of the present descriptive matter. There may be, and no doubt are, many cases in which persons would be quite as readily known in their neighborhoods by their partnership’s style as by their proper names; but it is quite evident that in other cases, especially if the partners were numerous, or any of them were dormant, it would be a matter of no little trouble, and of a good deal of uncertainty at least, to ascertain who were the persons «that really took under the description. It is a matter of great interest to the country that its land titles should be kept as free as possible from uncertainty. For this purpose, the law has required them to be put in writing; and, in order to give them publicity, has also required that they be put upon a public registry. That these provisions may be effectual for the purposes for which they were intended, the rules of the common law, as to the designation of the parties, must be maintained in their vigor. None of the adjudicated cases go to the length that we are now asked to go, and we think the public good forbids such a relaxation of the common law rules upon this subject.”
This decision is followed in Gossett et al. v. Kent (19 Ark. 607), and Winter v. Stock (29 Cal. 407), and, in our opinion, it would be unsafe to depart from the rule therein announced.
It may be true, as was argued by appellant, that the term “Bro.” is not usually as uncertain as “Co.” It would seem to limit the inquiry as to which brother was meant, and if there was only one brother it might be said that there was no good reason why such brother should not take the legal title. But, in reality, the term “Bro.” maybe just as uncertain as “ Co.” It is not uncommon, we believe, after a firm name has been once established, for other persons than the original partners coming into the firm as partners to continue business without any change in the firm name. But, be this as it may, it is quite evident that it would be unsafe to hold that a purchaser of real estate is *370 bound to ascertain who the partners composing the firm are. If such a rule should, be adopted it would have a tendency not only to create uncertainty in the transfer of real property, but would open wide the door for the commission of fraud. There is no law in this state compelling persons transacting business under a firm name to publicly disclose the names of the individuals composing the firm. Now, if the rule contended for by appellant should be adopted, the purchaser of real property from the alleged copartners would ne^er be secure. To illustrate: The purchaser examines the record and finds a conveyance to “ A. B. & Bro.” It is generally understood in the community that “ C. B.” is the “ Bro.” composing said firm. The purchaser, upon being so informed, takes the deed from A. B. to C. B. Before the statute of limitations expires another brother of A. B. comes into court with an action against the purchaser, and claims that he is the “Bro.” designated in the deed, and he proves, by clear and positive evidence, that he i.s the ^real brother that was a member of the firm at the date of the execution and delivery of the deed, and that his other brothers had falsely misrepresented the facts to the purchaser. What security would the purchaser have in such a case ? None whatever. The fact, relied upon by appellant, that the deed in this case is made to T. B. & Bro. of Beno does not give to the deed any greater degree of certainty. The name, “T. B. & Bro.,” is the firm, and does not necessarily, or even by implication, allude to the brother that resided at Beno.
It may have been, for aught that appears in the deed, that T. B. employed his brother Isaac as a clerk, and yet during all the time of the copartnership, the “Bro.” who was a member of the firm, may have lived at New York or Paris.
The law ought not, and it does not, sanction any rule which would be susceptible of so much doubt and uncertainty, independent of its evident tendency to encourage fraud and perjury. In any event it must be acknowledged that the doctrine contended for by appellant would surely tend to destroy the security of titles to real property, and ought not to be upheld.
*371 Entertaining tbe opinion that Isaac Barnett never bad tbe legal title to tbe premises, it is unnecessary to decide tbe question whether this action was barred by tbe statute of limitations.
Tbe judgment of tbe district court is affirmed.