LINDLEY, appellant, *v.* DAVIS ET AL., respondents.

*Circumstances under which real estate standing in the names of copartners is held to be withdrawn from partnership assets.* — Two copartners as a firm were the owners of a house and lot which stood in their names. While the firm was solvent, one of them married, and with the acquiescence of the other moved with his wife into the house, for the purpose of making it a home, and filed and had recorded a declaration claiming the property as a homestead. Afterwards a creditor of the firm levied upon the entire property under a writ of attachment. *Held,* that the property had been withdrawn from the firm assets, and that the copartners held the same as tenants in common.

*A co-tenant is entitled to a homestead in the realty held in co-tenancy, under the laws of Montana.* — Under the facts above stated, *held,* that a co-tenant is an owner within the meaning of section 311, division 1, Revised Statutes of Montana (sec. 322, div. 1, Comp. Stats. Mont.), and as such is entitled to the homestead exemption allowed by said section in real estate held in co-tenancy.

*Homestead statutes should be liberally construed.* — Homestead exemptions are not in derogation of the common law, and the homestead statutes of Montana should be liberally construed. *Lindley* v. *Davis,* 6 Mont. 453, reconsidered and overruled. BACH, J., delivered a dissenting opinion.

*Appeal from District Court, Gallatin County.*

J. J. DAVIS, for the respondents on rehearing.

We submit the following points and authorities to show that our homestead exemption law is derived from

the statute of Minnesota, and not from that of California. The homestead exemption law of Minnesota, passed in 1858, is found in the revision of those laws of 1866, at page 498. No homestead exemption law was enacted in Montana until January 7, 1869. See Laws of Fifth Session 1868–69, pp. 77–79. The provisions of our law then passed are identical with those of our present law, except as to the area of a rural homestead, and its provisions are the same as those of the Minnesota statute above referred to. See Statutes of Minnesota, Rev. 1866, p. 498, secs. 1, 2, 3, 4, 6; and compare these with the provisions of the Montana statute, Rev. 1879, pp. 101, 102, secs. 311, 312, 313, 314, 315. On March 10, 1860, the Minnesota statute was amended, providing that removal from or sale of a homestead should not render the same liable to sale on execution. This provision is identical with section 317 of our homestead law. Rev. Stats. 1879, p. 102, sec. 317, and Minnesota Revision 1866, p. 499. The California homestead law is set forth in Wood's California Digest, at pages 483, 484. It is different from ours in many essential particulars. It makes no distinction between rural and urban homesteads; provides for the setting apart and valuation of homesteads by appraisers; is vague and uncertain as to its area. It contains no provision for the acquisition or holding of a homestead upon land of which the claimant is not the owner, as in our section 315. It is submitted that the decisions of the California court interpreting and applying the homestead laws of that state are not unqualifiedly applicable in the construction of our law on that subject, the respective statutes being essentially different.

LUCE & ARMSTRONG, for the appellant. No brief on file on rehearing.

McCONNELL, C. J.  This was an action of ejectment.
Respondents, in their answer, disclaimed as to a part of
the premises, and set up homestead exemption as to the
remainder.  Appellant, in his replication, denies the
right of respondents to homestead.  Trial by the court,
sitting instead of a jury.  Judgment for defendants, and
appeal in error by plaintiff.

There seems to be no dispute about the facts.  Those
material to be noticed are as follows, to wit: William H.
Babcock conveyed an undivided half-interest in fee-
simple to the disputed premises — a house and lot — to
respondent, Will F. Davis, June 3, 1881; said Babcock
having the fee-simple title to the whole of it prior to that
time.  Respondents, Will F. Davis and Ollie I. Davis,
were intermarried May 27, 1883, and began to occupy
said house and lot as their home October 10, 1883, and
made formal declaration of homestead November 17, 1883,
and had it duly recorded.  Nelson Story commenced suit
against W. H. Babcock and Will F. Davis, as partners,
under the firm name and style of Babcock & Davis, and
sued out an attachment, and had it levied on said house
and lot November 28, 1883.  Said Nelson Story recov-
ered judgment in said suit September 26, 1884.  Appel-
lant, Lindley, purchased of Story this judgment.  Exe-
cution was issued October 1, 1884, and the lot sold and
purchased by appellant, who took a sheriff's deed.  Bab-
cock & Davis were partners in the business of loaning
money and selling real estate.  They executed partition
deeds in severalty of their real estate June 3, 1884, by
which respondent Will F. Davis became the sole owner
in fee-simple of the house and lot in controversy, but
after the levy of the attachment, November 28, 1883.
While Babcock and Davis were partners they held the
title to this house and lot, not in their firm name of
Babcock & Davis, but in their individual names, as
tenants in common.  After Davis became the sole owner

of the house and lot, June 3, 1884, he filed, and had duly recorded, another declaration claiming homestead therein. Appellant purchased the judgment of Story, and the house and lot, at sheriff's sale, with full notice of the homestead claim of respondent, who served notice of his claim on the sheriff before the sale, which notice the sheriff read at the time of the sale. It is conceded that the lot does not contain over one quarter of an acre, and the value of both the house and lot is not over two thousand four hundred dollars. The respondent, as the head of a family, occupied and claimed the house and lot, which are situated in the town of Bozeman, as a homestead, from October 10, 1883, up to the present time.

The sole question, then, is, Did the court err in finding that the respondents were entitled to a homestead exemption under the foregoing state of facts? The rights of the appellant relate to the time of the inception of the lien of the attachment. The respondents, in their claim of a homestead, must stand or fall upon the title of the respondent Will F. Davis to an undivided half-interest in the premises in controversy at that time. We are met upon the threshold of this discussion with this question: What are the interests of respondent Davis in the premises in controversy? Were they partnership property? If so, must they not be regarded as a part of the capital stock of the concern, and as personalty? We find the doctrine upon this subject very clearly stated in the case of *Hewitt* v. *Rankin*, 41 Iowa, 35, —: " Real estate held by a partnership is to be regarded as the property of the firm, as to the creditors and all persons dealing with it, when necessary to protect their rights. The partner is to be regarded in such cases as holding only an interest in the stock or capital of the partnership, which is personal property. If the business of the firm be in operation, or there be outstanding liabilities against them, the partners have not an interest in its lands or other assets

that may be regarded as property. Their interest is in the stock of the firm, — whatever, upon final settlement, may be due them"; citing *Meily* v. *Wood*, 71 Pa. St. 488; 1 Washburn on Real Property, 3d ed., 574; Lindley on Partnership, 463.

The conversion of real property into personalty is a device of equity, in order to effectuate the settlement of partnerships. The rule ceases when the partnership is settled and its debts are paid. The partners then hold their real estate as tenants in common, relieved of any trust in behalf of the partnership. The weight of American authorities sustains this doctrine. Freeman on Cotenancy and Partition, sec. 118. If the decision of this case rested upon the doctrine above stated, then the respondents cannot be allowed a homestead, for this exemption cannot be carved out of personal property. The fact that tenants in common are also partners does not of itself invest the realty with any of the characteristics of personalty; nor is the fact that it was paid for out of partnership money decisive of the question. Copartners may withdraw realty from the partnership for the purpose of holding it severally; and in this event they become simply co-tenants in such land. Freeman on Cotenancy and Partition, sec. 114.

In this case, Babcock & Davis built the house with partnership money, in the years 1880 and 1881, and lived in it. In May, 1883, Davis married, and October 10, 1883, moved with his wife into this house, for the purpose of making it his home. On November 11th following, he filed his declaration, claiming it as his homestead, and had it duly recorded. This, we take it, was a public withdrawal of this house and lot from the partnership assets, and a dedication of it as a homestead. Babcock, by his silence at least, consented to it, and in June, 1884, in confirmation of what had already been done, he executed a deed of his undivided half to Davis. We think,

as a matter of fact, it is clear, from the proof in the case, that it was not the intention of the copartners to hold this house and lot as any part of their partnership assets or stock in trade, but to withdraw it, if it ever had been such, that Davis might have it as a home. This dedication of the place as a homestead was made before the levy of the attachment. Story had full knowledge of respondent's claim when he sued out the attachment, and so had Lindley, the appellant, when he purchased the judgment, and had the house sold, and took his sheriff's deed. There is no pretext that the firm was insolvent at the time this homestead was set apart and claimed as such, or that there existed any equitable grounds upon which it should be subjected to the payment of appellant's judgment, notwithstanding its withdrawal from the partnership assets, and dedication to the purposes of a homestead. We hold that, under the proof in the record, Babcock & Davis were tenants in common of the house and lot in controversy, and the question is, whether a co-tenant is entitled to a homestead exemption under our law. We think he is, and that the judgment of the court below should be affirmed.

This case was heard at the last term of this court, and reversed; the court holding that the respondents were not entitled to a homestead. 6 Mont. 453. The learned justice who wrote the opinion placed the decision upon the ground that our statute granting the homestead exemption was taken from the California act, and the courts of that state had held that a tenant in common in land was not entitled to the homestead exemption. They had so held before the passage of our act, and this was a sufficient evidence of what the legislative will was in the passage of our act. This court, however, before adjournment, granted a rehearing of the case, and vacated the order reversing it, and continued it until this

term.    The case is now before us for final determination.
The decisions of the different courts of last resort in
the several states and territories are in hopeless conflict,
some of the judges giving to the language of the home-
stead-exemption statutes a liberal construction, and hold-
ing tenants in common in land entitled to the exemption;
while others, giving a strict construction, hold that they
are not entitled thereto.    But we are told that we are bound
by the California decisions already referred to.    We do
not think so.    By a comparison of our statute with that
of Minnesota, we find it almost a *verbatim* copy of the
Minnesota law on the subject of homestead.    There is
no mistaking the fact that the draughtsman of our stat-
ute copied it from the Minnesota statute.    Stats. Minn.,
Revision 1866, p. 498.

There is much similarity between our statute and that
of California.    Our section 313 is common to both the
California and Minnesota statutes; but there are material
matters about which they widely differ.    The only meas-
ure of the homestead is its value under the California
act.    The homesteader is entitled to five thousand dol-
lars' worth of realty, no matter where situated, or for
what purpose used.    Under our act, if the homestead is
land used for agricultural purposes, and not in any town
plat, city, or village, 160 acres are allowed, provided its
value does not exceed two thousand five hundred dollars;
or if it is a lot in a town plat, city, or village, then it
must not exceed one fourth of an acre, and its value
must not exceed two thousand five hundred dollars.    The
homesteader may take his choice of the farm in the
country, or the lot in town, the value being the same.
These are precisely the provisions of the Minnesota
statute, except the former cannot exceed eighty acres,
and instead of one fourth of an acre in town, it says
one lot.    The attention of the court was not called to

the Minnesota statute last term, nor did it have the whole of the California act before it.

A late senator, in advocating in the United States Senate the adoption of a general homestead law, said: "Tenantry is unfavorable to freedom. It lays the foundation of separate orders in society, annihilates the love of country, and weakens the spirit of independence. The tenant has in fact no country, no hearth, no domestic altar, no household god. The freeholder is the natural supporter of a free government, and it should be the policy of republics to multiply their freeholders, as it is the policy of monarchies to multiply their tenants."

The homestead exemptions are not in derogation of the common law; hence this is no reason why they should be strictly construed. By the common law, a man could only have satisfaction of goods, chattels, and the *present* profits of land, but not of the lands themselves. 3 Bla. Com. 418; Thompson on Homestead and Exemption Laws, secs. 2 et seq. We think our statute should be liberally construed. Our statute provides that "a homestead consisting of any quantity of land, not exceeding 160 acres, used for agricultural purposes, and the dwelling-house thereon, and the appurtenances to be selected by the owner thereof, and not included in any town plat, city, or village; or, instead thereof, at the option of the owner, a quantity of land not exceeding in amount one fourth of an acre, being within a town plat, city, or village, and the dwelling-house and its appurtenances, owned and occupied by any resident of the territory," etc.; "provided said homestead shall not exceed in value the sum of two thousand five hundred dollars." Rev. Stats. 101, sec. 311. It will be seen that the homestead is dedicated to the *owner;* the language of the statute being "owned" and "occupied" by any resident. To aid us in arriving at its meaning, we

quote section 315. It provides that "any person own-
ing and occupying any dwelling-house on land not his
own, which land he shall be rightfully in possession of
by lease or otherwise, and claiming such house as his
homestead, shall be entitled to the exemption of such
house." The statute says the head of a family owning
and occupying a house, on land not his own, but which
he is lawfully in possession of, shall have the benefit of
it. He need have no title to any part of the land. And
the other section gives the homestead in land and houses
to the owner and occupier of them without qualification.
He need not be the sole owner, nor does it prescribe the
character of the title, whether equitable or legal. The
statute does not say to him who owns the entire estate
in the lands, but to him who owns and occupies it, leav-
ing it to the court to say when the head of a family is
the *owner*. " The word ' owner,' within the meaning of
the homestead and exemption law, and even in the case
of certain criminal offenses, includes all who have a
claim or interest in the property, even though it is an
undivided interest, or falls short of absolute ownership
in fee." *Lozo* v. *Sutherland,* 38 Mich. 168; Thompson
on Homestead and Exemption Laws, sec. 174.

As already stated, the courts of California have held
that tenants in common are not embraced by this term
" owner." The first case in which this doctrine was
held is that of *Wolf* v. *Fleischacker,* 5 Cal. 244; and upon
this, and this alone, all the others are founded. *Kellers-
berger* v. *Kopp,* 6 Cal. 564; *Bishop* v. *Hubbard,* 23 Cal. 514;
*Elias* v. *Verdugo,* 27 Cal. 419; *Seaton* v. *Son,* 32 Cal. 481,
and *Carroll* v. *Ellis,* 63 Cal. 441. The reason given for
all these decisions is thus briefly laid down in the case
of *Wolf* v. *Fleischacker, supra,* to wit: "The statute did
not contemplate that homesteads should be carved out
of land held in joint tenancy or tenancy in common, be-
cause it has not provided any mode for their separation

and ascertainment. All of the questions of excess of value, appraisement, and division between debtor and creditor would arise only to give complexity to a state of facts for which no provision of the statute seems to be adequate, and would necessarily force into litigation, or at least into care and trouble, the innocent co-tenants, who would be thus subjected to annoyance without any fault of their own."

There is no pretense that the word " owner " cannot be applied to a tenant in common. There is no pretense that he cannot lawfully occupy all and every part of the premises, to the exclusion of all the world except his co-tenants; but it is a plea of want of adequate means to set apart the homestead, and the inconvenience of it. We cannot see the force of these reasons. Why cannot 160 acres, or the fourth part of an acre, more or less, of the value of two thousand five hundred dollars, more or less, be as easily set apart to a co-tenant as well as to the owner of the entirety? To meet this very construction, the legislature of California, 1868, passed an act extending the homestead exemption to joint tenants or tenants in common; but made no provision whatever for carving the homestead out of such interests, leaving them to be set apart under the same provisions of law which the court said are not adequate. Stats. Cal. 1867–68. The California court, having announced, in the case of *Wolf* v. *Fleischacker*, the doctrine that a tenant in common could not take homestead exemption, applied it to a case in which the husband and father, his wife and child, were tenants in common, and living on the land so held as their homestead, and denied them this exemption. In another case a head of a family, supposing that he had a good title to all of his land, lost his homestead exemption because it turned out that his title was defective to one undivided eighteenth of it. And in still another case, the head of a family sold an undi-

vided interest in his homestead, and it was held that he
thereby lost his exemption. And thus it worked, until
the legislature passed the act above alluded to.

In commenting upon the above reasons, the supreme
court of Minnesota said: "In setting off the homestead
between the claimant and his creditor, the rights of
third persons are not considered; nor does it matter
that a portion selected by and set off to the claimant,.
as between him and the creditor, may, in a subsequent
controversy between the claimant and some third per-
son, be lost forever. The object of the statute is not to
vest in the claimant an assured title to the portion set
off, but to protect that portion from levies and sales
under judgments. When there is the requisite owner-
ship and occupancy in that portion set off, it cannot be
material that such ownership and occupancy may be
subsequently defeated, as by foreclosure of a lien already
attached, or re-entry for condition broken, or the like."
*Kaser* v. *Haas*, 27 Minn. 409.

The setting apart of the homestead, as between the
debtor and his creditor, does not affect the rights of the
co-tenant. His title to his undivided interest, and his right
of entry and joint occupancy with the homesteader, are
not impaired; but because he may enter and occupy the
homestead with him, seems to us a very unsatisfactory
reason to be given for depriving the debtor of his home.
Nor can we see that any change whatever is made in the
relations of the co-tenants to the realty owned by them
by setting apart to one of them a homestead therein.
The homesteader gets only his interest in the land, sub-
ject to all the rights of the other tenant, and with all the
risk of losing his improvements upon partition. But
what concern is this of the creditor? The law will not
presume that the tenant, enjoying his homestead exemp-
tion, will usurp the rights of his co-tenant, and thus
produce litigation and inconvenience.

We close this discussion with a pertinent criticism upon the doctrine that a tenant in common is not entitled to a homestead exemption, made by Mr. Freeman in his work on co-tenancy and partition, section 54: " But we see no sufficient reason, even in the absence of statutes directly bearing upon the subject, for holding that a general homestead act does not apply to lands held in co-tenancy.

"The fact that a homestead claim might savor of such an assumption of an exclusive right as is inconsistent with the rights of the other co-tenant, and that the maintenance of such claim might interfere with proceedings for partition, form no very satisfactory reason for denying the exemption. If the rights of the other co-tenant are threatened or endangered, he alone should be permitted to call for protection and redress. The law will not sanction any use of the homestead in prejudice of his rights. But as long as his interests are respected, or so nearly respected that he feels no inclination to complain, why should some person having no interest in the co-tenancy be allowed to avail himself of the law of co-tenancy for his own, and not for a co-tenant's, gain? The homestead laws have an object perfectly well understood, and in the promotion of which courts may well employ the most liberal and humane rules of interpretation. This object is to assure to the unfortunate debtor, and his equally unfortunate but more helpless family, the shelter and influence of home. A co-tenant may lawfully occupy every parcel of the lands of the co-tenancy. He may employ them, not merely for cultivation, or for other means of making profits, but may also build houses and barns, plant shrubs and flowers, and surround himself with all the comforts of home. His wife and children may, of right, occupy and enjoy the premises with him. Upon the land, of which he is but a part owner, he may, and in fact he frequently does, obtain all

the advantages of a home.   These advantages are none
the less worthy of being secured to him and his family
in adversity because the other co-tenants are entitled to
equal advantages in the same home.   That he has not
the whole is a very unsatisfactory and a very inhumane
reason for depriving him of that which he has."

We are supported in these views by the following au-
thorities: *Tarrant* v. *Swain,* 15 Kan. 147; *Kaser* v. *Haas,*
27 Minn. 406; *McClary* v. *Bixby,* 36 Vt. 258; *Thorn* v.
*Thorn,* 14 Iowa, 54; *Lozo* v. *Sutherland,* 38 Mich. 169;
*Horn* v. *Tufts,* 39 N. H. 478; *Greenwood* v. *Maddox,* 27
Ark. 660.

Let the case be affirmed, with costs.

GALBRAITH, J., concurs.

BACH, J. (*dissenting*).   The former decision in this
case, reported in 6 Mont. 453, was based upon the theory
that our homestead laws were taken from the laws of
California, and were therefore to be interpreted in har-
mony with the decisions of California prior to the time
of their adoption.   Although some of the sections closely
resemble certain provisions of the laws of Minnesota, I
am still of the opinion that the whole spirit of our ex-
emption laws is based upon the laws of California.   Upon
that point, reference is made to the former decision.   In
basing that decision upon the well-known rule of inter-
pretation' of statutes, I was governed by the desire to
throw as little doubt as possible upon the exemptions
elsewhere provided for by our code, and by the firm con-
viction that the decisions of California were sound in
principle, and in accord with the current of authorities.
Even though our homestead laws were taken from those
of Minnesota, the decisions of that court cannot be said
to be binding upon us, because they were not rendered
until after our legislature had adopted the sections above
referred to.

It is a well-known rule of law that a firm cannot be the grantees in a deed. The law recognizes no such name as Jones & Co. The deed must be to the individual partners. The legal title, in such case, would be in those only whose names are mentioned, subject to equitable rights of the others. *Winter* v. *Stock*, 29 Cal. 407, citing *Arthur* v. *Weston*, 22 Mo. 378; *McCauley* v. *Fulton*, 44 Cal. 355.

It is also a well-known rule of law that partnership real estate may stand in the name of one partner, or it may stand in the name of each of the partners. In either case the firm would own the real estate, if it came within the rule of law which makes real assets belonging to the partnership. Babcock himself recognizes that rule in his testimony. Speaking of the deed from himself to Davis, dated June 3, 1881, he says: "Davis virtually owned a half-interest in said premises before a deed was given for it." So there can be but little importance in the fact that the property stood in the name of the copartners. In whatever way it stood, it was firm property. In the first part of the prevailing opinion, the deed from Babcock is described as though it was a conveyance to Davis of a half-interest in the premises in dispute only,—a house and lot. It was in fact a conveyance of an interest in a much larger tract of land; it comprised all the land of the partnership. Davis & Babcock were partners in the business of buying and selling real estate. This made the property partnership property. This is conceded by the learned chief justice, who also states the rule of law to be that a homestead cannot be carved out of real estate owned by partners as partnership property; but he states that the property was withdrawn from the partnership by consent, and that then the partners became co-tenants merely.

I presume that undoubtedly partners may withdraw

real estate from the firm, and that it would then be the property of the individuals of the firm; but it is in respect to such a withdrawal that my opinion differs from the opinion of the majority of the court. The learned chief justice bases the theory that the property in question was withdrawn from the partnership upon the following grounds: (*a*) Babcock & Davis lived in it from 1880 to 1881; (*b*) In May, 1883, Davis married, and in October, 1883, Davis and family moved into the house; (*c*) On November 17, 1883, Davis filed and recorded his declaration of homestead,— all of which the learned chief justice concludes was a public withdrawal from the partnership assets,— with (*d*) Babcock's consent to it by his silence, and that he confirmed this in June, 1884, by a deed to Davis.

I wish to carefully examine these facts:—

(*a*) Why should not Babcock &' Davis occupy their firm property when there are no other tenants for it? We will see that, just prior to the marriage of Davis, a certain Mr. Bogert was occupying the property.

(*b*) The fact that Mr. Davis and family moved into the house was not necessarily adverse to the claims of the partnership. Davis merely became a tenant of the property; was liable for rent to the firm as landlord, upon an implied agreement to pay the reasonable rent therefor. See Lindley on Partnership, *652, note; *Stoughton* v. *Lynch*, 2 Johns. Ch. 209.

(*c*) The recording of the declaration is not shown to have been known to Babcock, who therefore had no actual notice thereof. That notice was dated November 17, 1883, and the attachment under which plaintiff claims was levied on November 28, 1883, so that his silence was only of eleven days' duration, and as we shall see, it was the silence of ignorance, and not acquiescence. Neither can it be said that Babcock had constructive notice of the declaration of homestead,—

1. Because there is no provision in our statutes for recording such a declaration; 2. Because Babcock was not bound to look for it, as he was not a subsequent purchaser or encumbrancer.

(d) As to Babcock's acquiescence. He, as we have just seen, had neither actual nor constructive notice of the filing of the declaration. Neither did he have any notice that Davis was even living on the place with his family. Babcock testifies as follows: "Mr. Bogert occupied it when I went away, which was in January, 1883, and Mr. Davis occupied it when I came back. I think I returned in January, 1884." It will be seen, then, that when Babcock left the country, Davis and family did not occupy the house, and that before his return the attachment was filed. Neither was the deed a confirmation of Davis's act, either as to Babcock or his creditors. In the first place, it was subsequent to the lien of the attachment. In the second place, it was, according to Davis, a partition deed between the partners, given upon the dissolution of the partnership. I cannot, therefore, see any joint act or consent of these partners by which the property in question was separated from the partnership property prior to the attachment; and following the rule stated in the prevailing opinion, that homsteads cannot be had in real estate owned by partners, I am of the opinion that the judgment should be reversed. But there may have been such a withdrawal by Davis. The fact that Davis and family lived there would be presumed to be in furtherance of the partnership, there being nothing overt in the act; and, as we have seen, he would be tenant, and the firm would be his landlord. But the filing of the declaration was a direct attempt, unknown to his partner, done in his partner's absence, to withdraw that property from the firm assets, giving no consideration therefor to the partner.

According to most of the authorities, a partner in

whose name the title to real estate stands may convey the same; and if it be to a purchaser ignorant of the claim of the partnership, the purchaser will hold it free from those claims; but if it be to a purchaser knowing the claims of the partnership, such a purchaser would take only the interest of the grantor, and would take that interest subject to the claims of the firm creditors.

In either case, however, the act of the partner would constitute a dissolution of the partnership, and in the latter case, the entire property would be held as assets until the claims against the firm had been satisfied.

If the filing of the declaration of homestead claim was a withdrawal of that much property from the firm assets, it was a dissolution of the partnership, because it was done without the consent of the copartner, and was an act against the interest of that partner. The property was not held by an innocent purchaser, and was therefore held for the benefit of the creditors, was still firm real estate, subject to the claims of the creditors. Therefore, upon that ground, I think the case should be reversed.

I am also of the opinion that our statute does not contemplate the claim of a homestead by a co-tenant or by a joint tenant. The argument of the authorities holding the contrary doctrine seems to be founded upon the fact that the statutes do not say a " sole " owner; neither do they say a " co-owner," " co-tenant," or " joint tenant." As a matter of fact, where two people own real estate, they are not called " co-owners " or " joint owners," or even " owners." They are called " co-tenants," — " joint tenants," in legal phraseology, — and the word " owner " is never used to define them.

A and B are co-tenants. If it is held that A can have a homestead because A owns the property, with equal propriety it can be said that A can have a homestead in the land which B owns, or because B owns it. As a

matter of fact and law, neither A nor B owns any one particle of it. Each owns a one half of each particle thereof. But let us consider the purpose of this statute, and then consider the result of the interpretation of that statute by the decision in this case. It was intended by the legislature that a man with a family might provide, for himself and them, a home, of which, during his life-time, he could not be deprived except by his own act; and which, at his death, should descend to his widow, free from all claims of creditors, so that she would still have a home. That was undoubtedly the intent. Now, see the result of the interpretation. A claims a home-stead. B asks for partition. The property cannot ad-vantageously be actually partitioned. It never can when it is a city lot. The law must either destroy the home-stead, which it has declared to be inviolate, by a partition sale, or the law must diminish the value of the property in B by a forced actual partition of the house, or it must deprive B of his property entirely, which, I think, has been done in this case, as I shall attempt to show here-after.

It is a useless task to try to reconcile or to cite the au-thorities upon this question. Mr. Thompson, in his work on homesteads and exemptions, in a note to section 180, has made a collection of authorities upon either side. ·Those states declaring that the homestead *cannot* be had in property held by co-tenants are Massachusetts, Cali-fornia (before a statute giving the express right), Wis-consin, Michigan, Louisiana, to which may also be added Missouri and Nevada. Those holding the contrary doc-trine are stated to be Vermont, Iowa, Texas, New Hamp-shire, Arkansas, to which may be added Kansas and Minnesota. The learned chief justice cites 38 Mich. In that case the so-called co-tenants were coparceners; they were man and wife. But it will be seen that elsewhere, in *Amphlett* v. *Hibbard*, 29 Mich. 298, the court held that

one of two co-tenants could not have a homestead. In addition to the cases in the former decision in this case, I cite the following: *Bemis* v. *Driscoll,* 101 Mass. 421; *State* v. *Spencer,* 64 Mo. 355, 357.

There is one more point in this case. It is admitted by a majority of the court that plaintiff's right accrued upon the levy of the attachment, and that no subsequent act of Babcock's could deprive the plaintiff of his right to Babcock's interest. It certainly cannot be held that Davis, by filing his declaration of homestead, could deprive his co-tenant (or partner) of his right to one undivided half of the property. Davis, in his declaration, claims only " an undivided one half interest in said premises." The plaintiff, therefore, had certainly an undivided one half interest therein; was and is at least a co-tenant of Davis, and could not be excluded therefrom. The complaint, the answer, and the evidence show that Davis occupied the premises to the exclusion of the plaintiff, who is at least a co-tenant. The demand necessary, as between co-tenants, is alleged in the complaint, and not denied by the answer. In fact, the answer claims the right to the exclusive possession of the property. The findings of the court below practically admit that the defendant does withhold the property from the plaintiff. The judgment of the court below denies all right to the plaintiff, and this court affirms that judgment. Where one co-tenant is deprived of his possession by his co-tenant, and his demand to be admitted is refused, he may bring ejectment against his co-tenant. See Freeman on Cotenancy and Partition, secs. 290 et seq., and cases cited.

It would seem to me that the judgment in this case deprives the plaintiff of his property (at least one undivided half of the premises) without due process of law, which is carrying the doctrine of homestead rights to an extent somewhat beyond the authorities cited in the

prevailing opinion; and it seems to me that the result in this case is a practical illustration of the result of carving out homesteads from the property held in cotenancy.