[S. F. No. 535.   Department Two.—September 4, 1897.]

## BOARD OF EDUCATION OF CITY AND COUNTY OF SAN FRANCISCO, Appellant, v. JOHN GRANT et al., Respondents.

LANDLORD AND TENANT—LEASE—TITLE OF PERMANENT BUILDINGS.—Where leases of land for a term of years contained no covenant or provision that the lessees might remove buildings erected by them during the term, upon permanent foundations embedded in the soil, nor that the lessor would purchase or pay therefor, and such buildings remain on the land until after the expiration of the leases, they are part of the realty, and belong to the owner of the land.

ID.—LEASE OF SCHOOL LOTS BY CITY—ADVERTISEMENT BY SUPERVISORS—PROVISION FOR REMOVAL NOT EMBODIED IN LEASE.—Where a notice published by order of the board of supervisors in advertising for proposals to lease school lots provided that all improvements on the lots, unless purchased or paid for by the city and county, should be removed at the expiration of the lease by the owners thereof, etc., but no such provision was inserted in the leases authorized to be executed by the mayor, such provision does not form part of the lease, and the rights of the parties must be measured alone by the terms of the lease.

ID.—PRELIMINARY NEGOTIATIONS—LEGAL EFFECT OF LEASE—ABSENCE OF FRAUD OR MISTAKE.—Preliminary negotiations leading up to a lease, and not embodied in it, constitute no part of the final binding contracts of the parties, and the legal effect of the lease cannot be changed by reference to such preliminary negotiations, in the absence of a charge of fraud or mistake.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, upon submission of a controversy without action.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Rodgers & Paterson, and Harry T. Creswell, City and County Attorney, for Appellant.

The buildings in question are parts of the realty.   (Civ. Code, secs. 658, 660.)   The board of supervisors had no power to provide that title to such buildings should remain in the lessee, it not having been conferred upon them by the statute.   (*Zottman v. San Francisco*, 20 Cal. 102; 81 Am. Dec. 96; *French v. Teschemaker*, 24 Cal. 550; *Nicolson etc. Co. v. Painter*, 35 Cal. 699

*McCoy v. Briant,* 53 Cal. 250; *Smith v. Morse,* 2 Cal. 538–39; *Grogan v. San Francisco,* 18 Cal. 609; *Herzo v. San Francisco,* 33 Cal. 143; *Payne v. Treadwell,* 16 Cal. 234; *People v. McClintock,* 45 Cal. 11.) The lease was the final expression of the agreement of the parties, and superseded all previous negotiations. (*West Coast Lumber Co. v. Apfield,* 86 Cal. 335–40; *Hallett v. Wylie,* 3 Johns. 44; 3 Am. Dec. 457; *Jackson v. Clark,* 3 Johns. 424; *Jackson v. Meyers,* 2 Johns. 388; 3 Am. Dec. 504; *Kabley v. Worcester Gas Light Co.,* 102 Mass. 394; *Mayer v. McCreery,* 119 N. Y. 434, 439–41; *Abbott v. '76 Land & Water Co.,* 101 Cal. 567, 570.)

Mich. Mullany, and Ryland B. Wallace, for Respondents.

A municipal corporation has powers fairly implied in or incident to the powers expressly granted. (1 Dillon on Municipal Corporations, sec. 89; 15 Am. & Eng. Ency. of Law, 1041.) The lease became operative as to its terms when the bids made upon the terms proposed in the advertisement were accepted; and the lease is not in conflict with the previous contract, and cannot affect the rights of the tenants to their improvements thereunder. (*Sivers v. Sivers,* 97 Cal. 518; *San Francisco v. McGinn,* 67 Cal. 110; *People v. Board of Supervisors,* 27 Cal. 678.) The board and not the mayor was authorized to make the contract, and its award of the lease constituted the contract. It could not delegate its power to contract to the mayor. (15 Am. & Eng. Ency. of Law, 1043; *Meuser v. Risdon,* 36 Cal. 239; 95 Am. Dec. 181.) Proof is admissible of any collateral agreement which does not interfere with the terms of the written contract. (*Barshor v. Forbes,* 36 Md. 166; *Guidery v. Green,* 95 Cal. 635; *Chapin v. Dobson,* 34 Am. Rep. 512; *Powelton etc. Co. v. McShain,* 75 Pa. St. 238; 17 Am. & Eng. Ency. of Law, 443.)

THE COURT.—This is an agreed case submitted to the superior court of the city and county of San Francisco, under sections 1138, et seq., of the Code of Civil Procedure. The contest is between the board of education of said city and county, who is appellant here, and John Grant and a number of other persons who are here respondents. Judgment was rendered in the court below for the respondents, and the board of education

appeals. The controversy is as to the ownership of certain permanent buildings erected by the respondents upon certain school lots owned by the appellant.

The legislature, by an act approved March 30, 1874, authorized the board of supervisors of said city and county to lease for a term of twenty years certain parts of a one hundred vara school lot (No. 128), on the southwest corner of Market and Fifth streets, in said city and county. In pursuance of the authority granted by said act the board caused the land authorized to be leased to be surveyed and divided into eleven lots, each being twenty-five feet front, and executed leases to the respondents or their predecessors in interest—all the leases being substantially similar, and each being of one or more of the subdivisions of said land. The leases were for twenty years, and were executed by the board through the mayor, he having been authorized by the board to execute the leases. During the term of the leases the respective lessees excavated the soil of the lots "to an average depth of nine feet, and upon and in said soil so excavated built and laid brick foundation walls imbedded in the soil, and upon said foundation walls erected buildings, all of said buildings except the building erected on said lot No. 3 being frame, wooden buildings, four stories in height above the basement, and the building so erected upon said lot No. 3 being a brick building, three stories in height above the basement." All of the buildings remained on the land until after the expiration of the leases, and are still on said land. These buildings are, therefore, under both common and statutory law, part of the realty, and belong to the owner of the land in the absence of any covenant in the leases providing otherwise. And in neither of the leases involved here is there any covenant or provision that the tenants might remove the buildings. It is clear, therefore, that under the leases in question the buildings in controversy belonged at the expiration of the terms of said leases to the appellant, the board of education.

The respondents endeavor to avoid this apparently inevitable conclusion by contending that the leases are to be considered as changed or modified by a certain advertisement made by the board of supervisors for proposals to lease said lots, which contained the following: "All improvements on said lots, unless

purchased by the city and county, shall be removed at the expiration of the lease by the owners thereof, upon thirty days' notice being given by the mayor of the city and county; and, if not so removed prior to the expiration of said lease, the right shall be forfeited, and the ownership of the same shall vest in the city and county of San Francisco." Appellant contends that this provision, even if it had been made part of the lease, would have been beyond the power of the board of supervisors to make; that under the act from which they derived their authority they had no power to contract for the purchase of improvements; that no provision was made for any funds to make such purchase; and that the powers of said board were strictly limited by the terms of the act, which did not include the authority to make any such a provision. We do not deem it necessary to discuss this contention, because the said provision did not form part of the lease, and by the lease alone are the rights of the parties to be measured. After proposals were received the board passed a resolution with respect to each of the respondents or his predecessor, to the effect that a lease for twenty years of a particular lot was awarded to him; that the lease was to commence and the first payment to be made five months from the date possession of the lot was given; and that "the mayor is hereby authorized and empowered to execute the aforesaid lease on behalf of this city and county under such conditions and restrictions as may be by him considered necessary and proper to protect the public interests, on receiving a liquidated damage bond with at least two sureties, conditioned that the person to whom the lease is awarded, his successors and assigns, shall observe the conditions *thereof*, and pay the monthly rental when due during the continuance of the same." Afterward leases were made by the mayor in the name of the said city and county, and bonds were given by the respondents to the effect that they would observe the conditions *thereof*, and the lessee was freed from paying rent until five months after he took possession; and in the leases there were no stipulations, covenants, or conditions whatever as to the removal of the buildings. On the contrary, there was an express covenant in each lease by the lessee that at the expiration of the lease he would "peaceably and quietly leave, surrender, and yield up unto the said party of the first part, her successors or assigns, all and

singular the said demised premises, reasonable use and wear thereof and damages by the elements excepted." The ambiguous paragraph of the advertisement for proposals above quoted, the resolutions directing leases to be made by the mayor, a certain report of the finance committee of the board recommending that the lessee should be given five months free of rent to erect buildings, and certain other antecedent matters, were mere parts of the preliminary negotiations leading up to the leases; but the leases, and they alone, constituted the final binding contracts of the parties by which their rights in the premises were fixed.

This is not only so as a matter of law, in the absence of any charge of fraud or mistake (*Abbott v. '76 Land & Water Co.*, 101 Cal. 567; *West Coast etc. Co. v. Apfield*, 86 Cal. 335), but it was evidently so understood and contemplated by the parties. The resolutions authorizing leases to be made expressly provided that they should be made through the mayor, under such "conditions and restrictions" as he should consider necessary and proper to protect the public interests, and that bonds should be given securing the compliance of the lessees with "the conditions thereof"—that is, with the conditions of the leases to be executed by the mayor; the respondents accepted the leases and gave the bonds, and must be presumed to have known what they were doing. Moreover, there is no averment or pretense of mistake or fraud. Neither the advertisement nor the resolution of award was a lease or part of a lease. The resolution of award was a mere agreement to have executed a lease of the character indicated in the resolution itself; and such a lease was afterward, in accordance with the resolution, executed by the parties, which was, of course, the ultimate expression of the contract. The clause of the advertisement above quoted is scarcely susceptible of any definite meaning; but if it be construed as showing that at one time the project of allowing the lessees to remove permanent buildings was considered, it was simply a preliminary suggestion which was not finally adopted—an occurrence quite common in negotiations leading up to a contract. It is not improbable that the board concluded that it had no power, under the special statute authorizing it to act in the premises, to contract for the purchase of such buildings as the lessee might choose to put on the land; and, as suggested by counsel for appellant, the

privilege of occupying the land for a certain time free of rent, which was not at first contemplated, was probably accepted by the lessees in lieu of any right which may at one time have been considered of removing buildings. But the motives which, in this case, induced the final contract are beyond judicial inquiry; the lease is the thing which fixes the right of the lessor and lessee.

There is nothing in *San Francisco v. McGinn*, 67 Cal. 111, which affects the case at bar. That case merely involved the question whether one of the buildings here in contest was, during the running of the term, taxable to one of the respondents as "improvements"—the lessee denying that he owned the same; and the court merely held that "for the purposes of revenue" the lessee was to be considered as owner of the improvements and liable for the tax. The respondent was not a party to the action; the question arose during the term of the lease; the lessee at that time certainly had some interest in the improvement; and the court held that such interest was taxable. Neither is there anything in *Sivers v. Sivers*, 97 Cal. 518, that is of importance here. That case merely involved an agreement to pay money, and not any interest in realty; the written agreement to pay did not fix any time for payment, and the court below held that the money was payable on demand, which ruling was approved by this court; and that was conclusive of the case. The court said, however, in its opinion, that in such a case, where the writing was silent as to the time of payment, evidence of a "contemporaneous" oral agreement as to such time was admissible. If this be considered as more than *dictum*, still it has no applicability to the case of a lease of real property when one party seeks to change its legal effect by reference to prior preliminary negotiations.

For the reasons above given the judgment of the lower court is erroneous, and as the case is presented upon an agreed statement there is no necessity for a new trial.

The judgment appealed from is reversed, and the superior court is instructed to render judgment for the appellant, the board of education, in accordance with the prayer.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank.