[S. F. No. 903.   Department Two.—November 8, 1899.]

D. MACKENZIE, Appellant, v. WILFRED H. HODGKIN, Respondent, and H. E. WILLIAMS et al., Appellants.

126  591
127  618
126  591
145  571

ACTION BY ASSIGNEE—ADVANCES BY COMMISSION MERCHANTS—CROSS-COMPLAINT AGAINST ASSIGNORS—BREACH OF CONTRACT.—Where plaintiff sued as assignee of commission merchants to recover advances made by them to the defendant upon a crop of grapes and raisins in excess of the proceeds of sale, the defendant may file a cross-complaint against plaintiff's assignors, averring that the money sued for was paid in part performance of their contract with him, and that they are liable to him for breach of the contract upon their part.   Such cross-complaint is germane to the cause of action, and "relates to or depends upon the contract or transaction upon which the action is brought," within the meaning of section 442 of the Code of Civil Procedure.

ID.—NEW PARTIES TO CROSS-COMPLAINT.—Where a complete determination of the controversy cannot be had without bringing in parties to the contract or transaction involved in the litigation, who have not been named as parties to the action in the original complaint, they may be brought in as parties defendant to a cross-complaint.

ID.—OMISSION TO SERVE PLAINTIFF WITH CROSS-COMPLAINT—HARMLESS IRREGULARITY.—The cross-complaint against the assignors of plaintiff ought regularly to have been served upon the plaintiff, but where all the matters of substance pleaded in the cross-complaint were pleaded in the answer served upon the plaintiff, and where it appeared in evidence without conflict that plaintiff had no beneficial interest in the cause of action, and that any proceeds recovered would belong to his assignors, who defended the cross-complaint, the omission to serve plaintiff therewith is a harmless irregularity, not prejudicing any right of the plaintiff, for which the judgment cannot be reversed.

ID.—SALE OF RAISINS UPON COMMISSION—"PRICES NAMED BY ASSOCIATION"—EVIDENCE.—Under a contract by commission merchants not to sell raisins "below prices named by the association," without consulting the owner, the breach of which is alleged, where the evidence showed that the prices referred to were a list of prices agreed upon at a meeting of raisin growers and packers, the introduction in evidence of a published schedule thereof, whether erroneously allowed or not, is cured by evidence thereafter admitted without objection or contradiction that the prices shown in the published schedule were the prices fixed by the association at their meeting.

ID.—SUBSEQUENT ABANDONMENT OF PRICES BY ASSOCIATION—CONTRACT NOT AFFECTED.—Evidence that the association of growers and packers collapsed and abandoned their agreed schedule of prices, and had thereafter no fixed prices, and that the members there-

after sold at what rates they pleased, cannot have the effect to relieve the commission merchants from their obligation to sell at the prices named by the association, unless the owner consented to a change.

ID.—CONTRACT FOR "HIGHEST MARKET PRICE" — EVIDENCE — MARKET PRICE AT PLACE OF DELIVERY.—Where commission merchants in Fresno were charged with the negligent breach of their contract to use their best endeavors to obtain the "highest market price" for the raisins of defendant, and the contract contained a recital that they were "engaged, among other things, in the packing and selling of raisins in the city of Fresno," and provided that they would not, without the consent of plaintiff, sell below prices named by an association which was local to the state, evidence is competent to show the highest market price prevailing at Fresno, the place of delivery of the raisins under the contract, regardless of whether the commission merchants were or were not negligent in not selling at Fresno.

ID.—ORAL SALE TO COMMISSION MERCHANTS—RAISINS SPECIFIED IN WRITTEN CONTRACT—IMPROPER EVIDENCE.—It was not admissible for the cross-complainant to prove an oral sale to the commission merchants, who were defendants to the cross-complaint, of a quantity of raisins at a fixed price, which were included in the written contract by which it was agreed that the entire crop of the cross-complainant should be sold by them upon commission, where there was no proof that any payments were made upon such oral sale, or that anything was done by the cross-complainant which he was not bound to do in fulfillment of the written contract.

ID.—EXECUTED ORAL AGREEMENT.—An executed oral agreement, which may be proved for the purpose of altering a previous written contract, must consist in the doing or the suffering of something not required to be done or suffered by the terms of the writing.

APPEAL from a judgment of the Superior Court of Fresno County.   J. R. Webb, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, for Appellants.

A cross-complaint cannot bring in new parties. (Code Civ. Proc., sec. 442; *Harrison v. McCormick*, 69 Cal. 616; 5 Ency. of Pl. & Pr. 624, 673; 1 Barton's Chancery Practice, sec. 111; *McGavock v. Morrison*, 3 Tenn. Ch. 355; *Shields v. Barrow*, 17 How. 145, per Curtis, J.; *Wright v. Frank*, 61 Miss. 32; *McMullen v. Eagan*, 21 W. Va. 250; *Bank v. Railroad*, 11 Wall. 624.) The cross-complaint, not having been served upon plaintiff, could not constitute ground for relief. (Code Civ. Proc., sec.

442; *White v. Patton,* 87 Cal. 151; *Hibernia etc. Soc. v. Clarke,* 110 Cal. 27; *Hibernia etc. Soc. v. Fella,* 54 Cal. 598; *Metcalf v. Hart,* 3 Wyo. 513; *Ford Gold Min. Co. v. Langford,* 1 Colo. 62; *Coach v. Adsit,* 97 Mich. 563; *Byrd v. Sabin,* 8 Ark. 279; *Hartfield v. Brown,* 18 Ark. 284; *Endel v. Leibrock,* 33 Ohio St. 268; *Thode v. Spofford,* 65 Iowa, 298; *Lowenstein v. Glidewell,* 5 Dill. 325.) The court erred in admitting oral evidence to vary and contradict the written contract. The newspaper report of the prices adopted by the association was not competent evidence. (*Whelan v. Lynch,* 60 N. Y. 469; 19 Am. Rep. 202.) Prices in Fresno were not admissible. (*Pugh v. Porter Bros. Co.,* 118 Cal. 628; *Durst v. Barton,* 47 N. Y. 167; 7 Am. Rep. 428; *Cahan v. Platt,* 69 N. Y. 348; *Nickerson v. Soesman,* 98 Mass. 365; *Gregory v. McDowell,* 8 Wend. 435; *Jones v. St. Louis etc. Ry. Co.,* 53 Ark. 27; 22 Am. St. Rep. 175; *Nelson v. Morgan,* 2 Mart. (La.) 256.)

H. H. Welsh, and George E. Church, for Respondent.

Under our system, new parties may be brought in by cross-complaint. (Code Civ. Proc., sec. 389; *Colton Land etc. Co. v. Raynor,* 57 Cal. 592; *Winter v. McMillan,* 87 Cal. 264; 22 Am. St. Rep. 243.) The nominal plaintiff was not affected by the cross-complaint.

THE COURT.—Williams and others were partners under the firm name of Williams, Brown & Co. in the business of commission merchants at the city of Fresno, in this state. On August 31, 1893, they made a contract in writing with Hodgkin, whereby the latter agreed to pick, cure, and deliver to them at Fresno all the grapes and raisins to be produced that season on a certain vineyard in that vicinity owned by him, said Hodgkin, and Williams, Brown & Co. on their part agreed to pack all the raisins so delivered and sell the same for Hodgkin, they to charge specified rates of compensation for their services, and to make certain advances of cash to him on delivery of the crop at their packing-house. At various times from September 29, to November 22, 1893, inclusive, Hodgkin delivered to said Williams, Brown & Co. at Fresno above four hundred and sixty thousand pounds of raisins; they made advances to him on ac-

count thereof to an amount which proved to be greater than the proceeds of sales of the entire crop by the sum of two thousand six hundred and sixty-five dollars and seventy-five cents. They assigned their demand for such balance to Mackenzie, who was a bookkeeper in their employ, and he brought this action to recover the same from Hodgkin. The complaint is virtually a count for money loaned to Hodgkin by plaintiff's assignors. The defendant answered such complaint, and also filed a cross-complaint, not against Mackenzie, the plaintiff, but against said Williams, Brown & Co.; in both the answer and the cross-complaint he set up in various forms his transactions with Williams, Brown & Co. concerning the marketing and sale of his said crop, and alleged sundry derelictions in that behalf against them; as the result whereof he prayed in his answer that plaintiff take nothing, and in his cross-complaint for judgment against Williams, Brown & Co. for the sum of five thousand five hundred and fifty-five dollars and ninety-two cents above the amount of their advances to him. In each count of the cross-complaint—as also in the answer—it is alleged that the assignment on which plaintiff sues was made to him by his employers without consideration and merely for the purpose of qualifying him to sue on their demand; that his cause of action arose out of the contract of defendant with Williams, Brown & Co. relating to said crop of raisins, and the delivery, sale, and disposition thereof. The cross-complaint was not served on the plaintiff, nor did he answer thereto; it was, however, answered by Williams, Brown & Co. The trial was by jury and resulted in a verdict and judgment that plaintiff take nothing and that Hodgkin recover of Williams, Brown & Co. the sum of one hundred dollars.

1. Appellants argue that the court erred in allowing the cross-complaint to be filed. "Whenever the defendant seeks affirmative relief against any party, relating to or depending upon the contract or transaction upon which the action is brought, . . . . he may, in addition to his answer, file . . . . a cross-complaint." (Code Civ. Proc., sec. 442.) It is said that the cross-complaint here proceeds on a cause of action independent of, and not germane to, the matters alleged in the complaint of plaintiff. This objection is clearly unfounded;

the plaintiff sues to recover money loaned; defendant admits that he had the money of plaintiff's assignors, but avers, in effect, that he received it as part performance of their contract with him, and that they are liable to him for failure to perform the same fully. These averments, if proved, show that the relief sought by defendant "relates to or depends upon the contract or transactions upon which the action is brought," within the meaning of that language in the statute above quoted. The further objection that Williams, Brown & Co. could not properly be made parties defendant in the cross-complaint because they were not originally parties to the action, is also untenable. A complete determination of the controversy cannot be had without bringing in parties to the contract or transaction who have not been named as parties to the action in the original complaint. (*Winter v. McMillan,* 87 Cal. 256; 22 Am. St. Rep. 243; *Eureka v. Gates,* 120 Cal. 54; *Colton etc. Co. v. Raynor,* 57 Cal. 592, 593; *Chalmers v. Trent,* 11 Utah, 88, and cases cited.)

It is also contended that the omission to serve the cross-complaint on Mackenzie, the plaintiff, was a fatal irregularity. It was no doubt negligent practice; said section 442 provides that the cross-complaint "must be served on the parties affected thereby." But in this instance no right of the plaintiff has been at all prejudiced by such omission, and the judgment cannot be reversed because of it. For all the matters of substance charged in the cross-complaint were pleaded affirmatively in defendant's answer, which was served on the plaintiff, so that the latter met in the prosecution of his own action every issue which would have been tendered to him had he been served also with the cross-complaint; and, further, it was proved at the trial by his own testimony and without conflict that plaintiff took by the assignment no interest beneficial to himself in the demand he sued on, and that, if he had recovered, the whole proceeds of his recovery would have been paid to Williams, Brown & Co., who made full defense against the defendant's alleged cause of action.

2. In the contract of August 31, 1893, Williams, Brown & Co. promised that they would not sell the raisins "below prices named by the association" without consulting Hodgkin; and

one of the breaches alleged in the cross-complaint is that they did sell at prices less than those "named by the association" without consulting him or obtaining his consent. There was evidence at the trial that the prices so referred to in the contract were a list agreed upon by a number of raisin growers and packers at a meeting held by them on August 22, 1893, as the prices at which raisins were to be held for sale that season. In order to show the schedule so established, defendant offered in evidence printed matter purporting to be a copy thereof in a certain newspaper published at Fresno on August 23, 1893; and, in connection with the offer, Hodgkin testified that the parties to the contract had such published prices in mind when they signed the instrument of August 31st. Plaintiff and Williams, Brown & Co. objected that the newspaper report was not the best evidence, and the objection was overruled. If there was any error in this—which we do not decide—it was cured by evidence subsequently admitted without objection and without contradiction that the prices of raisins shown in the publication received in evidence were the said prices fixed by the association on August 22d.

3. By another clause of the contract Williams, Brown & Co. agreed that they would endeavor to the best of their ability to obtain the highest market price for defendant's raisins; and in one count of the cross-complaint they are charged with negligence in the performance of this covenant, whereby, it is claimed, they failed to obtain the full value of the goods. Upon the questions thus arising the defendant was permitted to introduce evidence of the market price of raisins at Fresno during the months of October and November, 1893—the period of the delivery of defendant's product to Williams, Brown & Co. Appellants contend that evidence of this nature should have been confined to the market value of the raisins at points in the eastern states where they were actually sold by Williams, Brown & Co. They rely on the decision in *Pugh v. Porter Bros. Co.*, 118 Cal. 628, to support this point. We think, however, the present case is materially different. In the case cited it appeared that the goods were delivered to the commission merchant for the purpose of shipment from the place of delivery and to be sold in a foreign market; accordingly, it was

held that the factor's duty was to obtain the value in the foreign market, and that evidence of the state of the market at the place where he received the goods was inadmissible. But here it does not appear that the raisins were necessarily to be sent away from Fresno for purposes of sale; the contract was prefaced with a recital that Williams, Brown & Co. are "engaged, among other things, in the packing and selling of raisins in the city of Fresno"; they agreed that they would "endeavor to obtain the highest market price for the grade of goods sold, and in every way endeavor to realize upon all goods sold at the earliest moment and for the highest price." They further promised, as has been seen, that they would not sell "below prices named by the association" without consulting defendant; the association was a body local to this state, and not shown to have had any influence in determining prices at the east. From these provisions of the contract, and others not necessary to state, we think Williams, Brown & Co. were at liberty to sell defendant's raisins at Fresno or elsewhere; consequently, on the question whether they used reasonable diligence to obtain the best market prices it was as pertinent to show what prices prevailed at Fresno as in any other readily accessible market. Of course, this is not saying that they were negligent in not selling at Fresno; on the contrary, it may have been that the usual course of business, or other condition affecting their conduct, was such that ordinary prudence allowed or required them to ship the raisins to the east; that matter is not for decision now.

4. In the fifth count of the cross-complaint defendant alleged that he sold and delivered to Williams, Brown & Co. "eighty-six thousand eight hundred and forty-four pounds of Valencia raisins" at the price of three and one-half cents per pound, and that they yet owe him for the same a balance of twelve hundred and forty-three dollars and three cents. At the trial these allegations were strongly contested; defendant was allowed to testify that about October 1, 1893, Williams, Brown & Co. agreed with him orally to buy the said Valencia raisins at the price alleged—appellants objecting that the effect of the evidence is to vary by parol the terms of the written contract of August 31st. At the outset of his testimony defendant stated that "under the contract"—referring to the in-

strument of August 31st—he delivered to Williams, Brown & Co. all his raisins, including the Valencias; and although, when he came to testify concerning the alleged oral agreement of October 1st, he said that the "written contract referred *to* ordinary raisins, the oral one to dipped raisins called Valencias," yet it is clear that the Valencia raisins were made from the grapes which were the subject of the writing; the instrument required defendant to cure and deliver to Williams, Brown & Co., on the terms stated therein, "all grapes and raisins" grown and produced during that season on his vineyard. Defendant stated in effect that he made and delivered the Valencia raisins to Williams, Brown & Co. on their oral promise to pay three and one-half cents per pound for five carloads of them. His counsel argue that this is "an executed parol agreement," and therefore that evidence thereof is admissible to alter the previous writing. (Civ. Code, sec. 1698.) We do not think so; we find no evidence that Williams, Brown & Co. ever paid anything as on a purchase by them of the Valencias; and, as concerns Hodgkin, so far as appears he did nothing under the alleged oral agreement which he was not bound to do in the proper fulfillment of the written contract; there was no evidence that curing raisins by the Valencia process, and delivering the same when cured, was not the due and reasonable performance of his prior written promise to "cure and deliver" his entire crop. Obviously, the executed oral agreement, which may be proved for the purpose of altering a previous written contract, must consist in the doing or the suffering of something not required to be done or suffered by the terms of the writing. (See Civ. Code, secs. 1595, 1605, 1661; Pollock on Contracts, 161, 162; *Vanderbilt v. Schreyer*, 91 N. Y. 401.) True, the defendant here testified that he sold the Valencia raisins, but the alleged sale rests in mere spoken words, which in themselves could not be allowed to alter the writing; his acts toward the execution of any contract were only such, so far as proved, as the original agreement required him to perform. A written instrument would afford but slight protection to the parties in such cases if it could be varied in this manner; a bailment could be converted into a sale, or a sale into a bailment, according as the interests of either party, after delivery of the goods,

might lead him to the belief, real or feigned, that the delivery had not been pursuant to the original writing, but under a subsequent oral arrangement.

5. There was evidence that about October 1, 1893, the said association of growers and packers abandoned their agreed schedule of prices, the members selling thereafter at what rates they pleased; and appellants requested the court to charge the jury that if, before any sale of defendant's raisins by Williams, Brown & Co., the prices had been changed by the association, and the association had no fixed prices at the time of any of such sales, then Williams, Brown & Co. were "relieved from any obligation to sell for any association prices which were fixed at the time of the entering into the contract." The instruction was rightly refused; if the association had, in the course of the season, fixed prices different from those first agreed on, it may be that such modification should have been read into the clause of the contract referred to in the instruction; but no other prices were subsequently fixed; the members of the association simply abandoned the rates first agreed on; and we think their action in that particular did not release Williams, Brown & Co. from their promise to obtain the rates which had been fixed, or, as the alternative, to consult defendant before accepting lower prices. The collapse of the association would seem to furnish a reason why defendant should have desired to be consulted regarding prices of subsequent sales, for the natural tendency of that event was to increase the degree of caution necessary to be exercised by individual sellers. There is in the record, moreover, evidence tending in some measure to show that Williams, Brown & Co. did not regard this clause of the contract as nullified by the failure of the association to maintain the agreed prices. Thus, on October 26, 1893, they wrote to Hodgkins saying that up to that time they had "had no difficulty whatsoever in getting the prices fixed by the combination"; and as late as April, 1894, they wrote to him inquiring whether they should accept a specified offer for certain of his raisins they had then in New York—an offer apparently less than the original association price.

No material error is brought to our attention except the admission of evidence touching the alleged sale of Valencia raisins

to Williams, Brown & Co.; but because of that the judgment is reversed and a new trial ordered.

Hearing in Bank denied.