[Civ. No. 4121. Third Appellate District.—September 8, 1930.]

DORA M. TASKER, Plaintiff, v. ANTONIO M. NIETO et al., Defendants and Appellants; W. P. CUNNINGHAM et al., Defendants and Respondents.

Robert Adcock for Appellants.

John F. Poole for Respondents.

PLUMMER, J.—Judgment was entered in this action in favor of the respondent, Fanny R. Cunningham, and against the plaintiff and the defendants, Nieto. From this judgment the defendants Nieto appeal.

The plaintiff began this action to quiet title to certain property situate in the city and county of Los Angeles, described as follows, to wit: "The northerly portion of Lot 81, Leonis Tract, deed book 824, pages 123–126, records of Los Angeles County, having a frontage of 24.95 feet on the westerly side of Utah street, and being 21 feet at the westerly end, 123.60 feet at the southerly side, and 106 feet at the northerly side." The defendants Nieto, and the respondents Cunningham answered, claiming title to the property described in the complaint, and respectively praying for judgment in their favor.

At the conclusion of the trial the court made the following findings, omitting such portions as are not material:

### Finding No. 1.

"That the defendant Fanny R. Cunningham was, during all the time herein mentioned, and now is, the owner in fee simple and entitled to the possession of the following described real property situate in the county of Los Angeles, State of California, to-wit: 'The northerly one-half of Lot 81, Leonis Tract, as per map recorded in deed book 824, pages 123–126, records of Los Angeles County.'"

### Finding No. 2.

"That the claims of said plaintiff Dora M. Tasker, and said defendants Antonio M. Nieto and Magdalena M. Nieto, . . . in and to said real property, are without any right whatever, and that said plaintiff Dora M. Tasker and said defendants Antonio M. Nieto and Magdalena M. Nieto, . . . have no estate, right, title, interest in, or claim or lien upon said property, or any part thereof."

### Finding No. 4.

"That the allegations of plaintiff's complaint herein, and the answers or cross-complaint of defendants Magdalena M.

Nieto and Antonio M. Nieto, in conflict with the foregoing findings, are not true.''

From these findings the court drew its conclusions of law that the defendant Fanny R. Cunningham was entitled to a decree quieting her title to said property against the claims of the plaintiff and the other defendants in this action, and enjoining and debarring them from asserting any estate, right, title or interest in and to said property, or any part thereof.

After the beginning of this action it appears that the defendant W. P. Cunningham died, but prior to his death he had conveyed to the defendant Fanny R. Cunningham, and the cause was continued, with Fanny R. Cunningham representing the Cunningham interests. The defendant and respondent Fanny R. Cunningham, and the defendants Nieto, respectively, answered the plaintiff's complaint, claiming title to the premises involved in this action. It does not appear from the record that the answer filed by the defendant and respondent Cunningham was ever served upon the defendants Nieto; nor does it appear that the answer and cross-complaint interposed by the defendants Nieto were served upon the defendant Cunningham.

The record shows that the defendants Nieto claimed an' interest in the premises by reason of a certain agreement of purchase entered into between the plaintiff and the defendants Nieto. The answer and cross-complaint of the defendants Nieto also asserted title to the premises by adverse possession.

Basing their contention upon section 442 of the Code of Civil Procedure, the appellants argue that the judgment in favor of the respondent Cunningham should have been limited simply to a judgment for costs, and that the court should not have decreed that title to the premises involved, vested in the defendant Cunningham.

Were it not for the statement of counsel made to the court as hereinafter set forth, and the theory upon which the cause was tried, that all of the respective parties were putting their respective titles in issue, the following cases would be applicable and show that where a defendant files a cross-complaint wherein a claim is made adverse to another party-defendant, such cross-complaint must be served upon the defendant against whom the claim is

asserted. (*Houghton* v. *Tibbets*, 126 Cal. 57 ]58 Pac. 318] ; *MacKenzie* v. *Hodgkin*, 126 Cal. 591 [77 Am. St. Rep. 209, 59 Pac. 36] ; *Strong* v. *Shatto*, 201 Cal. 555 [258 Pac. 71] ; *Shain* v. *Belvin*, 79 Cal. 262 [21 Pac. 747] ; *Harrison* v. *McCormick*, 69 Cal. 616 [11 Pac. 456].)

The statements of counsel for the respective parties to which we have referred were elicited by request of the trial court at the beginning of the trial, that the respective parties state their claims or the basis upon which title was asserted to the premises involved. Following this request the plaintiff, through her attorney, made a statement to the effect that title was claimed by reason of the conveyance made to her from the Empire Securities Company, a corporation, which had acquired title to the premises by reason of a deed executed to the Empire Securities Company, as the purchaser of the premises, upon a sale made by reason of failure to pay a bond theretofore issued, based upon an assessment that had been levied upon the lot to cover costs of street improvement. The defendant and respondent Cunningham, through her counsel, stated to the court that title was claimed to the premises by reason of a deed executed to the defendant W. P. Cunningham as the purchaser, at a sale made on account of delinquent taxes, and a subsequent conveyance from the defendant W. P. Cunningham to the defendant Fanny R. Cunningham. The appellants Nieto, through their counsel, stated to the court that title was claimed by reason of a patent from the city of Los Angeles, which title had come down to the defendants through various people. The defendants Nieto also claimed to have been in possession of the property since about 1903, and that there was a homestead on the premises, and they had a contract of purchase from the plaintiff Tasker to whatever rights plaintiff had in the premises, which provided for the payment of certain sums of money in installments, and that all of the installments had been paid. Following these statements the court proceeded to hear testimony as to the claims of the respective parties, as fully to all intents and purposes as though the answers filed by the different defendants had been served upon their co-defendants. The record also fails to show that any of the parties to this action were taken by surprise by reason of the alleged failure to serve an-

swers, or that any of the parties asked for additional time to present testimony.

Having been tried upon the theory that the *titles* of the respective parties involved in this action were placed in issue, we think it too late now to raise any question as to the failure of the service of pleadings, especially when the record fails to show that any objection was urged in the court below.

In the year 1914 the record shows that the property was sold on account of delinquent taxes to W. P. Cunningham, who thereafter conveyed his interest to the respondent Fanny R. Cunningham. In the year 1916 the property was again sold by the city treasurer of the city of Los Angeles on account of the failure of the owner of the lot to pay the amount due and delinquent on bonds issued for street assessment work. At this sale the Empire Securities Company of Los Angeles became the purchaser. This company conveyed to the plaintiff Dora M. Tasker, who thereafter entered into an agreement of purchase and sale with the defendants Nieto. It was claimed by the plaintiff, upon the trial, that the installments had not been paid, as provided for in the agreement of purchase and sale, and that therefore the defendants Nieto had forfeited their interest in the property. The court made no finding upon this issue, and therefore, what we have to say relates only to the question introduced touching the question of payments. As set out in the transcript the testimony is overwhelmingly in support of the contention of the defendants Nieto, that everything due upon the contract of purchase entered into between the plaintiff and the defendants Nieto, had been paid by the defendants Nieto, including all taxes that had subsequently accrued upon the premises. While there is some testimony to the effect that the respondent Cunnningham paid taxes upon the lot, it is of such an uncertain character as scarcely to raise a conflict with the testimony of the defendants Nieto and their witnesses that the installments due on the contract with the plaintiff Tasker were all paid, and that the money to pay the taxes was also paid by the defendants Nieto to the plaintiff Tasker, and the receipt set out in the transcript indicates that the plaintiff Tasker alone paid the taxes after acquiring the deed to the premises. It was objected by the respondent in the court below

and is objected to here, that the deed to Empire Securities Company was and is invalid by reason of a failure to name the Empire Securities Company in the granting clause of the deed of conveyance executed and delivered to it by the city treasurer of the city of Los Angeles, and also that it is void by reason of the fact that in the latter portion of the conveyance the correct amount due on the bond for which the sale was being made is not set forth.

The contention that the grantee is not named in the conveyance just referred to is based upon the fact of the omission of the name of the grantee in the granting clause. The granting clause in this conveyance reads as follows: "Now, therefore, this indenture witnesseth: That for and in consideration of the sum of $78.90, in hand paid to N. T. Powell, said City Treasurer, receipt whereof is hereby acknowledged, I, N. T. Powell, City Treasurer of the City of Los Angeles, have granted, bargained, sold, conveyed and confirmed, and by these presents grant, bargain, sell, convey and confirm unto the said ———, and to his heirs and assigns forever, the property hereinafter referred to." (Here follows a description of the property involved in this action.) It is this portion of the instrument of conveyance that is most strongly urged upon our attention as establishing its invalidity. This contention, however, appears to us to be without merit. There is a clear distinction between a writing in which no grantee is named in the granting clause, and an instrument of conveyance in which no grantee's name appears in the instrument. Where the grantee's name does not appear in the instrument, it is evident that the instrument does not rise to the dignity of a conveyance. On the other hand, the law is well settled that it is not necessary for the name of the grantee to appear in the granting clause. If the name of the grantee elsewhere appears, the conveyance is good as against such objection. No California case has ever held that a deed is invalid because the name of the grantee does not appear in the granting clause. The following cases hold that a deed which does not contain the name of the grantee is void as a conveyance: *Wilson* v. *White*, 84 Cal. 239 [24 Pac. 114]; *Wunderlin* v. *Cadogan*, 50 Cal. 613; *Winter* v. *Stock*, 29 Cal. 407 [89 Am. Dec. 57]; *Harris* v. *Barlow*, 180 Cal. 142 [179 Pac. 682]. These cases, as we

have said, do hold that for an instrument to rise to the dignity of a conveyance, it must show the name of the grantee, or the party to whom the grant is made. But none of these cases hold that the name of the grantee must appear in the granting clause.

In the deed involved in this action the name of the grantee appears in five different places. In the very inception of the deed the name of the Empire Securities Company appears as the party of the first part. Again, on the date of sale the Empire Securities Company appears as the purchaser. Following this, the Empire Securities Company, described as the purchaser of the property, appears and makes the necessary affidavits. The deed further shows that the city treasurer sold the property to the Empire Securities Company, who was the highest bidder therefor. The concluding, or *habendum* clause, of the deed reads: "To Have and To Hold, all and singular, the hereinbefore and last named premises, together with the appurtenances, unto said, the Empire Securities Company, party of the second part," etc.

There appears to be no dissenting opinion in the long line of cases having to do with instruments naming the grantee, which hold that a deed is sufficient if the name of the grantee appears with sufficient certainty in the challenged instrument, to show to whom the conveyance is made. Without analyzing or setting forth the facts involved in the several cases cited, we will simply list the authorities which show that the challenged deed is not subject to the objection that the grantee's name is not set forth therein: *Berry* v. *Billings,* 44 Me. 416 [69 Am. Dec. 107]; *Hennings* v. *Paschke,* 9 N. D. 489 [81 Am. St. Rep. 588, 84 N. W. 350]; Devlin on Real Estate, 3d ed., sec. 219; Jones on Real Estate, sec. 224; *Weekley* v. *Weekley,* 75 W. Va. 280 [83 S. E. 1005]; *Vineyard* v. *O'Connor,* 90 Tex. 59 [36 S. W. 424]; *Campbell* v. *Everhart,* 139 N. C. 503 [52 S. E. 201]; *Snow* v. *Gallop,* 57 Tex. Civ. App. 572 [123 S. W. 222]; 18 C. J., p. 174, sec. 56. All of these cases follow the rule which we have stated that "it is not essential that the grantee should be formally named in the granting part of the deed. It is only necessary that, taking the whole instrument together, there is no uncertainty as to the grantee."

■ It is further contended that following the decision in *Chaplin* v. *Jocelyn*, 182 Ca¹. 294 [187 Pac. 962], the conveyance of the city treasurer of the city of Los Angeles is invalid by reason of the fact that the amount recited in the granting clause of the deed is in excess of the amount set forth as due upon the bond for which the sale was made and the amount for which the property was sold to the Empire Securities Company. This contention, however, likewise appears to be without merit. The law under which the sale was made does require that the notice must state the amount due on the bond for which the sale was to be made. Whether the amount set forth as due upon the bond is correct or incorrect does not appear by anything in the transcript. So far as the transcript is concerned it would indicate that the amount due upon the bond was correctly stated in the notice of sale, and that the property was sold for the correct amount. The fact that the Empire Securities Company paid more than was necessary thereafter, to obtain the deed, cannot be held to have violated any of the rights of the owner of the lot. So far as the record shows, the owner of the lot was correctly informed as to the amount due and the amount for which the property would be sold, and up to the date of sale, had the right to appear, pay that amount, and stop the sale. After the rights of the owner of the lot had been foreclosed by the sale, we do not very well perceive how any excess of payment thereafter made by the purchaser to the city treasurer would affect the validity of the sale.

■ The tax deed under which the respondent Cunningham claims title dates back to the year 1908, when the property was sold for delinquent taxes. Five years later, under the provisions of section 3771 of the Political Code then in force, which is now embodied in section 3771a of the Political Code, the property was sold to the defendant W. P. Cunningham. On the part of the appellant it is claimed that this sale is void. First: That there is a misnomer in the deed to Cunningham, of the person to whom the property was assessed, the recital in the deed to Cunningham being as follows: "That whereas the real property hereinafter described was duly assessed for taxes in the year 1908, to J. P. Goytino, and was thereafter, on the 3d day of July, 1914, duly sold to W. P. Cunningham,"

etc. The contention that the name "J. P. Goytino" was not, and is not, the name of the person to whom the property was assessed, may be correct as stated in appellants' brief, but there is not one word of testimony in the record supporting such contention. The record is absolutely silent as to whom the property was assessed in the year 1908.

Second: It is further contended in appellants' brief that there are two tracts of land in the county of Los · Angeles, one, the M. Leonis tract, situate in the county of Los Angeles, and the other the Leonis tract, situate in the city of Los Angeles. In the deed made by the tax collector of the county of Los Angeles, the property is described as follows, to wit: "M. Leonis Tract north half of Lot 81, as per book 824, page 23 of Deeds, records of Los Angeles County." The page on which the record of this deed begins, appears to be 123 instead of 23. The property described in the complaint does not include all of the property mentioned in the deed, nor does the description in the Cunningham deed coincide with the property described in the complaint. The property described in the complaint, as we have stated, is situated in the Leonis tract, with the metes and bounds described and being a part of lot 81, as described in book 824, page 123, situated in the city of Los Angeles. The property described in the tax deed to W. P. Cunningham, and by W. P. Cunningham conveyed to Fanny R. Cunningham, is described as part of the M. Leonis tract, situated in the county of Los Angeles, and reference is made to a different page of book 824 of the records of Los Angeles County.

It is true that the city of Los Angeles is situate in the county of Los Angeles, and property situate in the city of Los Angeles would necessarily be in the county of Los Angeles, but the contrary is likewise true, that property situate in the county of Los Angeles is not necessarily situate within the limits of the city of Los Angeles.

There is no testimony in the record relative to the assessment and sale upon which the Cunningham deeds must rest. The deed from the state to W. P. Cunningham was simply introduced in evidence, counsel stating that the respondent relied simply upon the deed. What we have to say thereafter relates merely to the sufficiency of the description of the property contained in the deed to the

Cunninghams, and does not relate to the assessment or the notice of sale on account of delinquent taxes further than that the inference may be drawn that the description in the deeds corresponds with the assessment and notice of sale.

In appellants' brief there appears a statement that there is a certain tract of land in Los Angeles County known as the "M. Leonis Tract" as per map recorded in book of deeds 824, page 129. However, we cannot consider this statement as the record contains no testimony relating thereto.

It is further asserted that the testimony in the record shows that no notice was ever given to the appellants, as required by section 3771 (which is now section 3771a of the Political Code), under and by virtue of which a sale was made to W. P. Cunningham. This contention may be true, but it can be given no effect upon this hearing. So far as the record shows, or so far as any facts are set forth from which an inference may be drawn, the property was not assessed to the appellants in 1908, nor is there anything in the record which shows that under the circumstances of the particular assessment, the law required notice to be mailed to the owner of the property, or to the person to whom it was assessed. There is no showing that the address of the owner of the property, or that the address of the person to whom the property was assessed in 1908, appeared upon the assessment-roll. Without this showing, the failure to give notice does not affect the validity of the deed. In *Scott* v. *Beck,* 204 Cal. 78 [266 Pac. 951], the Supreme Court said: "The respondent contends that the appellant has not established the validity of his title because he did not prove, or offer to prove that notice was mailed to the party to whom the land was last assessed. The rule of law making the mailing of a notice of the delinquent list a jurisdictional prerequisite to the making of a valid tax deed by the tax collector has been limited by the more recent decision of this court to cases where the last known postoffice address of the landowner was upon the assessment-roll from the date of the delinquent assessment down to the assessment last made before the sale." (Citing *Jacoby* v. *Wolff,* 198 Cal. 667–681 [247 Pac. 195]; *Kehlet* v. *Bergman,* 162 Cal. 217 [121 Pac. 918].)

Basing their argument upon the case of *Los Angeles County* v. *Hunt*, 198 Cal. 753 [247 Pac. 897], appellants contend that as their title is deraigned through the Empire Securities Company of the city of Los Angeles, which obtained a deed to the property claimed by the appellants, upon a sale made thereof by the city treasurer of the city of Los Angeles, based upon a street assessment dating back to the twenty-ninth day of November, 1911, deed bearing date of 1916, that the title of the Cunninghams, if any, acquired by the deed dated August 10, 1914, based upon a delinquent tax sale for taxes delinquent for the year 1908, is cut off and foreclosed. The property involved was not used for any public purpose. The record shows that whatever real estate was covered by the assessment, tax sale and deed based thereon to the Cunninghams was simply a certain portion of land which passed to the state by operation of the tax laws, if at all, and was not used, either by the state or by any of its agencies, for a public purpose. The real question involved in the case of *Los Angeles County* v. *Hunt, supra,* was not whether property belonging to the state, not used for a public purpose, was subject to special assessments, but whether, under the provisions of the Constitution and the Improvement Act under consideration in that case, property belonging to a state agency might be exempted from such assessment by a resolution of the city council adopted in accordance with the provisions of the act under consideration. It is true that in the opinion in the Hunt case the Supreme Court refers to the case of *City of Fresno* v. *Fresno Irr. Dist.*, 72 Cal. App. 503 [237 Pac. 772], and cites it to the effect that lands of a municipality, lying within an irrigation district, might be assessed for the special purposes for which the district was formed, in the absence of an express or implied exemption of such lands in the statute creating such district.

Answering the contention of the appellants, the respondent cites section 3787 of the Political Code, the portion of which, applying to the present case at the time in question, read as follows: "Such deed conveys to the State the absolute title to the property described therein free of all incumbrances, except when the land is owned by the United States or this State, in which case it is *prima facie* evidence of the right of possession accrued as of the date of the deed

to the State." This section has been amended to except from the operation of the statute—"any lien of taxes levied for municipal or irrigation purposes." The respondent also cites 44 C. J., pages 522 to 525, where, among other things, it is stated: "In the absence of a Constitutional provision to the contrary, the question whether public property shall be assessed for local improvements depends solely on the legislative will, and the legislature has power to make property of the State situate within a municipality, liable to special assessments for benefits accruing from local improvement. . . . Nevertheless, in accordance with the well settled principle heretofore considered, the power to subject the property of the State to assessments of this character does not exist in the absence of statutes conferring it, and the power must be conferred either expressly or by necessary implication."

A reading of the Street Improvement Act approved March 18, 1885 (Stats. 1885, p. 147), and the acts amendatory thereof and supplemental thereto, under which the street work was done, and the proceedings taken leading up to the sale of the property, described in plaintiff's complaint, and the execution of a deed to the Empire Securities Company would lead to the conclusion that the property involved in this action was not exempt from special assessments for improvements benefiting the property, as distinct from general taxation, being property not used for a public purpose. However, by reason of what is hereinafter stated, it is unnecessary to decide specifically whether the lot of land described in plaintiff's complaint was or was not property belonging to the state of California, not used for a public purpose, and therefore, subject to assessments for local improvements, as there is no showing that the lot described in plaintiff's complaint ever became the property of the state of California.

We come now to a further consideration of the tax deed executed by the tax collector of the county of Los Angeles to W. P. Cunningham. As heretofore stated, the respondent simply offered this deed in evidence without any testimony whatever showing that it applied or referred to, or covered the same land as that described in the complaint and which is claimed by the appellants Nieto. The deed to W. P. Cunningham first refers to the property as the prop-

erty sold for the nonpayment of delinquent taxes assessed for the year 1908. The descriptive part of the deed there read as follows: ''The real property hereinafter described was duly assessed for taxation in the year 1908.'' Coming down, then, the real property so assessed is described as follows: ''That certain real property in the County of Los Angeles, State of California, more particularly described as follows, to-wit: 'M. Leonis Tract, N. ½ of Lot 81, as per Bk. 824, p. 23, of Deeds, Records of Los Angeles County.' '' No reference is made to the property described being within the corporate limits of the city of Los Angeles. No map is referred to as describing the premises assessed or conveyed. When property is situate within a municipality, subdivision 2 of section 3650 of the Political Code requires the naming of the city or town. The portion of the section to which we refer reads: ''The improvements to be assessed against a particular section, tract or lot of land upon which they are located; city and town lots, naming the city or town and the number of the lot and block, according to the system of numbering in such city or town, and the improvements thereon.'' If the deed set forth in the transcript, and certified as being a true copy, is correct in its statement that the property therein described is in accordance with the assessment, then and in that case the assessment is void and no title whatever passed to the state by reason of any sale on account of alleged delinquent taxes. ▆ Again, the description as set forth in the deed does not refer to any map where the property in question is described. It does refer to book 824, page 23. The property claimed by the plaintiff in her complaint, and under whom the appellants claim, is described upon a map recorded in book 824, page 123 et seq. There is no testimony in the record that there is any map on page 23 of book 824, describing the land involved in this action. Again, the plaintiff and appellants claim land described as the ''Leonis Tract.'' The deed under which respondent claims, described the land as the ''M. Leonis Tract.'' As stated herein, we cannot consider the claim that there are two tracts, as set forth in appellants' brief, but we refer to the difference in description merely to show that the deed standing alone, upon which the respondent bases her claim of title, is insufficient. That the description in this deed is insufficient, is clearly

shown in the case of *Campbell* v. *Shafer*, 162 Cal. 206 [121 Pac. 737]. In that case we find the following: "It is claimed that the description of the land upon the assessment roll, in the deeds and in all the tax proceedings, was insufficient for want of certainty. The description throughout the proceedings was as follows: 'In the city of Los Angeles, Main Street Tract, Lot 3, Block A.' In regard to this claim the District Court of Appeal for the Second District said, in deciding this case: 'Standing alone and unaided by other evidence, this description is concededly insufficient.' " (Citing a number of cases.) In that case, however, after having introduced such a deed, the parties relying thereon proceeded to supplement the description, and showed by oral testimony that it applied to the land in controversy.

Again, in the case of *Wright* v. *Fox*, 150 Cal. 680 [89 Pac. 832], it is held that under the subdivision of the section to which we have referred, an assessment which fails to designate the city or town, and which is unaided by any reference to any map, plat or tract, is void, and all subsequent proceedings and the deed made thereunder are likewise void. See, also, *Gilbert* v. *Conservative Loan & Trust Co.*, 138 Okl. 1 [67 A. L. R. 885, 280 Pac. 278], and a long list of cases in the note beginning on page 890, of 67 A. L. R., collecting cases where assessments and deeds have been held void for uncertainty as to the description of the premises involved.

In 24 California Jurisprudence, page 196, the text reads: "A description in an assessment book which accurately describes land by reference to a recorded map, is valid and sufficient to charge the owner with notice, but it has repeatedly been held that a description by lot and tract, without such a reference is *prima facie* invalid. When reference is made to a map, the map thereby becomes a part of the description, and may be introduced in evidence to identify the land assessed. But the identity of the map referred to should be clearly established; where a description by lot and block does not refer to any official map the court cannot take judicial notice of the existence of such map, nor is there a presumption as to its existence." There is an entire want of any such testimony in the record in this case. There is no testimony indicating that a definite tract

of land was known by any name used or appearing in this record. No attempt, as we have said, was made to aid the record by any testimony as to maps, or anything introduced, save and except a certified copy of a deed which shows that it does not rest upon an assessment complying with the code provisions, and that if the recitals contained in the deed are true, the assessment was void. From the cases which we have cited, it appears that the description in the deed is void for uncertainty and does not refer to the property claimed by the appellants and, standing alone, is not sufficient to show that the respondents have any title or claim whatever to the property possessed and occupied by the appellants for the more than ten years intervening between the time of the attempted assessment in 1908 and the beginning of this action in 1925.

Appellants further insist that finding No. 4, to the effect "that the allegations of plaintiff's complaint herein, and the answers or cross-complaint of defendants, Magdalena M. Nieto and Antonio M. Nieto, in conflict with the foregoing findings, are not true," is so vague and uncertain as to render it void. We do not need to cite authorities supporting this contention. A reading of the finding is sufficient to show that this objection is well taken.

The court did not find upon appellants' asserted title by adverse possession. An examination of the pleadings, however, shows that this issue was not in fact presented to the trial court for decision; nor do we find anything in the record upon which a finding to such effect could be based, even though it does satisfactorily appear that the appellants have been in possession of the premises claimed by them for a long period of time.

The judgment of the trial court is reversed.

Thompson (R. L.), J., and Finch, P. J., concurred.